Respondent, A.S., appeals from the order of the trial court terminating her parental rights pursuant to the Adoption Act (750 ILCS 50/0.01 et seq. (West 1996)). Respondent argues that the trial court erred in exercising jurisdiction contrary to the provisions of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq. (1983)). Respondent also argues that the trial court erred in finding respondent to be an unfit parent and in finding that the termination of respondent's parental rights was in the best interests of her minor children. We affirm.
Respondent and her minor daughters, M.S. 1 and M.S. 2, were *Page 1000 
placed in protective custody on August 21, 1993. On September 28, 1993, the trial court adjudged the two children neglected. Respondent was ordered to complete and comply with a client service plan and to follow all of the recommendations of the Illinois Department of Children and Family Services (DCFS). Respondent, also a minor, and her children were placed into foster care with Lubertha P., the paternal grandmother of M.S. 1.
During the next few years, DCFS and the Catholic Social Services (CSS) reported on respondent's progress. Some reports indicated progress, but most of them indicated that respondent was uncooperative and failed to meet almost all of the goals in the client service plan. Respondent was placed into two additional foster homes because she ran away on several occasions.
On September 7, 1995, DCFS recommended to the trial court the termination of respondent's parental rights. The State filed a petition for the termination of respondent's parental rights on February 20, 1996. At a hearing on June 3, 1997, respondent alleged that the children were of Native American heritage and that proper jurisdiction rested with a tribal court pursuant to the ICWA. Because respondent alleged the children were of Cherokee heritage, her caseworker sent notice to the Cherokee tribes in North Carolina and Oklahoma. The North Carolina tribe responded and stated that the children were not registered members of their tribe. Furthermore, the letter stated that "the Eastern Band of Cherokee Indians had neither the power nor inclination to intervene." The Oklahoma tribe did not respond. In July 1997 the trial court determined that respondent's alleged Native American heritage was not an issue.
On October 3, 1997, the trial court heard evidence regarding respondent's parental fitness. The trial court subsequently ruled that respondent was unfit. On January 29, 1998, the trial court heard evidence concerning the best interests of the children. The trial court heard testimony of the foster mother of the children and found that it was in the children's best interests to terminate respondent's parental rights. Respondent timely appeals.
On appeal, respondent first asserts that jurisdiction over this matter properly resides with a tribal court pursuant to the ICWA. The ICWA was enacted by Congress to:
 "protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimal Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the *Page 1001 
operation of child and family service programs." 25 U.S.C. § 1902
(1983).
The ICWA was enacted as a response to the disproportionate removal of Native American children from their families and tribes. H.R. Rep. No. 1386, 95th Cong., 2d Sess. 19 (1978). "The importance of tribal primacy in matters of child custody and adoption cannot be minimized, for the ICWA is grounded on the premise that tribal self-government is to be fostered and that few matters are of more central interest to a tribe seeking to preserve its identity and traditions than the determination of who will have the care and custody of its children." In re Adoption of Halloway,732 P.2d 962, 966 (Utah 1986). The ICWA seeks to provide Native American tribes with the ability to preserve their culture and identity by granting tribal courts either exclusive or concurrent jurisdiction over child custody and adoption matters involving an "Indian child." In re Adoption of S.S., 167 Ill.2d 250, 257 (1995).
The ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."25 U.S.C. § 1903(4) (1983). The ICWA is not applicable until the party asserting its applicability establishes that the child meets one or both of the criteria. In re A.G.G., 899 P.2d 319, 321 (Colo. Ct. App. 1995). In the absence of a conclusive finding of the child's eligibility in a particular tribe, either by that tribe or by the Bureau of Indian Affairs, the trial court must determine if the child is an "Indian child." In re Baby Boy Doe, 849 P.2d 925, 929 (Idaho 1993). In fact, the court must initially determine if a child is an "Indian child" within the meaning of the ICWA.People ex rel. South Dakota Department of Social Services, In re C.H.510 N.W.2d 119, 123 (S.D. 1993).
In the present case, the trial court was only presented with the unsubstantiated assertion that the children were of Native American heritage. Respondent did not provide any evidence that either she or her children were eligible for membership in any particular tribe but did allege that she was part Cherokee. The caseworker apparently sent notice to two different bands of the Cherokee tribe. One responded that the children were not members of the tribe and that the tribe had no inclination to intercede in the proceedings. The other band failed to respond entirely. Respondent provided no explanation for allowing almost four years to pass before notifying the trial court of the children's alleged Native American heritage. Although not clear from the record, it is certainly possible that the trial court believed respondent's claims of Native American heritage to be incredible. After *Page 1002 
all, respondent allowed her children to be placed into foster care for years and challenged the trial court's jurisdiction only when a hearing was about to be held on her parental fitness. The trial court continued the parental fitness hearing to afford respondent an opportunity to provide some evidence that the ICWA was applicable to her and her children. The trial court did not provide a full evidentiary hearing on this eleventh-hour motion, and it does not appear from the record that such a hearing was warranted. Respondent has failed even to allege that her children would fall within the meaning of "Indian children" under the ICWA. If her children are not eligible for membership in an "Indian tribe," then the ICWA is inapplicable. Upon our review of the record, we determine that the trial court properly exercised jurisdiction over this matter.
Respondent also argues that the trial court erred in finding respondent to be an unfit parent. Our standard of review in cases of parental unfitness is limited to determining whether the trial court's decision was against the manifest weight of the evidence.In re Adoption of Syck, 138 Ill.2d 255, 274 (1990); In re R.B.,297 Ill. App.3d 97, 99 (1998). Cases concerning parental unfitness are unique unto themselves; we will not make factual comparisons between cases. See In re S.J., 233 Ill. App.3d 88, 113 (1992). It is necessary that the State prove by clear and convincing evidence one statutory factor of unfitness for the termination of parental rights to ensue. In re A.J., 296 Ill. App.3d 903, 913 (1998). Therefore, this court need not consider other findings of unfitness where sufficient evidence exists to satisfy any one statutory ground. In re A.S.B., 293 Ill. App.3d 836, 843 (1997). A reviewing court accords great deference to a trial court's finding of parental unfitness and will not disturb such a finding unless it is against the manifest weight of the evidence. In re G.V., 292 Ill. App.3d 301, 306 (1997). Finally, our function is not to substitute our judgment for that of the trial court on questions regarding the evaluation of the witnesses' credibility and the inferences to be drawn from their testimony; the trial court is in the best position to observe the conduct and demeanor of the parties and witnesses as they testify. In reAdoption of J.R.G., 247 Ill. App.3d 104, 109 (1993).
Here, the trial court was presented with ample evidence that respondent was an unfit parent for M.S. 1 and M.S. 2. A detailed DCFS service plan was created for respondent in 1993. Respondent had every opportunity to comply with this service plan and demonstrate her interest in her children. The record reflects that, since 1993, respondent has made little progress towards completing this goal. She continually received unsatisfactory ratings on the service plans for failing to maintain a weekly budget, cooperate with her foster mother *Page 1003 
and CSS/DCFS, follow rules in the foster home, clean up after herself, comply with her probation, enroll in parenting classes, and pass drug/alcohol evaluations. Respondent failed even to visit her children for months at a time. The foster mother testified that respondent almost never visited the children except when the children were taken by the foster mother to respondent's mother's home for holidays and birthdays. Respondent ran away from her foster homes on several occasions and failed to complete her high school equivalency courses. The State presented expert testimony that it was highly doubtful that respondent would be able to parent her children. Respondent argues that she has shown her fitness by caring for her two boys, who were born since M.S. 1 and M.S. 2 were placed into foster care. However, this is insufficient to counter the substantial evidence of respondent's disinterest in her children and unfitness as a parent to M.S. 1 and M.S. 2. Upon our review of the record, we determine that the trial court did not err in finding respondent unfit and terminating her parental rights.
Respondent finally argues that the trial court erred in finding that terminating her parental rights was in the best interest of her minor children. Even if a parent has been found unfit to have custody of a child, it does not necessarily follow that the parent cannot remain the child's legal parent with attendant rights and privileges. In re B.C., 247 Ill. App.3d 803, 806 (1993). Once the trial court has made a finding of unfitness, all considerations must yield to the best interests of the child or children. In re M.C., 197 Ill. App.3d 802, 806 (1990). "It is not until after a parent has been found to be unfit that the court may consider evidence of the child's best interest." In re V.S., 285 Ill. App.3d 372, 375 (1996). Once a parent has been found unfit by clear and convincing evidence, the decision to terminate that individual's parental rights rests within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. In re V.O.,284 Ill. App.3d 686, 691 (1996).
Upon our review of the record, we determine that the trial court did not abuse its discretion in terminating respondent's parental rights. As we set forth above, the trial court found that the State proved respondent to be an unfit parent by clear and convincing evidence. Respondent failed to visit her children for months at a time, despite the fact that she lived less than five miles away from them for a period of time. The trial court found respondent's contrary testimony to be incredible and believed the testimony of the CSS and the foster mother regarding visitation. Respondent has failed to demonstrate a reasonable degree of interest, concern, or responsibility. She has also shown a lack of reasonable progress in working towards the return of *Page 1004 
her children. We do note that, as of the best interest hearing, respondent has obtained an apartment for herself and is currently living with her two other children. Overall, however, respondent has shown little interest in securing the return of M.S. 1 and M.S. 2. On the other hand, the foster mother has provided a stable, loving home for the two girls for over four years and wishes to adopt them. We determine that the trial court did not abuse its discretion in terminating respondent's parental rights.
For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.
Affirmed.
BOWMAN, P.J., and THOMAS, J., concur.