*In re* TINYA W., Minor (The People of the State of Illinois, Petitioner-Appellee, v. Quinella W., Respondent-Appellant).

Second District    No. 2—01—0873

Opinion filed March 14, 2002.

Phyllis J. Perko, of Law Offices of Harlovic & Perko, of West Dundee, for appellant.

Meg Gorecki, State's Attorney, of St. Charles (Martin P. Moltz and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The respondent, Quinella W., appeals from the May 17, 2001, order of the circuit court of Kane County terminating his parental rights to his minor child, Tinya W. On appeal, the respondent contends that the State failed to prove his unfitness by clear and convincing evidence. We affirm.

On April 28, 1999, the State filed a petition alleging that Tinya W. was a neglected minor. As the respondent's location was not known at this time, he was served notice of the petition by publication. The respondent did not appear at the adjudicatory hearing. After hearing the State's evidence, the trial court adjudicated Tinya W. a neglected minor.

On July 26, 2000, the State filed a petition seeking to terminate the respondent's parental rights to Tinya W. The petition alleged that the respondent was unfit for the following reasons: (1) he abandoned Tinya W. (750 ILCS 50/1(D)(a) (West 2000)); (2) he failed to maintain a reasonable degree of interest, concern, or responsibility as to Tinya W.'s welfare (750 ILCS 50/1(D)(b) (West 2000)); (3) he deserted Tinya W. for more than the three months preceding the commencement of the adoption proceeding (750 ILCS 50/1(D)(c) (West 2000)); (4) he failed to make reasonable progress towards Tinya W.'s return within the nine months following the adjudication of neglect (750 ILCS 50/1(D)(m) (West 2000)); and (5) he manifested an intent to forgo his parental rights by failing to visit Tinya W. or to communicate with his caseworker (750 ILCS 50/1(D)(n) (West 2000)).

The trial court conducted a hearing on the State's petition on May 17, 2001. At the hearing, Carrie Mackowiak was the only witness to testify. Mackowiak testified that she was the Catholic Charities caseworker who had been assigned to the case in April 1999. At this time, Tinya W. was residing with the maternal grandmother. The respondent's whereabouts were unknown. Mackowiak prepared a client service plan on May 14, 1999. The only task set for the respondent was that he cooperate in being assessed for services once he was located.

Mackowiak rated the respondent's compliance with the service plan between April 1999 and July 2000 as unsatisfactory. Mackowiak testified that she conducted four diligent searches for the respondent during this time and that he could not be located. As part of her searches, Mackowiak examined the Putative Father Registry but found no match for the respondent's name.

While conducting a fifth search for the respondent in August 2000, Mackowiak located the respondent after screening the public aid rolls. After Mackowiak contacted respondent by letter, the respondent

telephoned Mackowiak sometime near the end of August 2000. Mackowiak did not testify as to the substance of this conversation. After this conversation, there was no further communication between the respondent and Mackowiak.

The record reveals that the respondent did appear before the trial court on September 11, 2000, during a status hearing. At this hearing, the respondent agreed to undergo paternity tests. The respondent again appeared before the trial court on October 31, 2000, at which time the trial court was advised that the paternity tests had revealed that the respondent was Tinya W.'s father. The trial court then appointed the public defender to represent the respondent at the proceedings. The respondent never again appeared in court and was not present at the hearing on the State's petition for the termination of parental rights.

Following the close of evidence, counsel for the respondent argued that the respondent could not be found unfit because he was never told by Tinya W.'s mother that he was the father of the child. Counsel argued that it was impossible for the respondent to abandon a child who he did not know existed. For this same reason, counsel argued that it would be unreasonable to expect the respondent to show concern, interest, or responsibility for Tinya W.'s welfare.

The trial court rejected these arguments and found that the State had proved the respondent's unfitness by clear and convincing evidence. The trial court found that the respondent should have known of the possibility of the minor's conception as a result of his act of sexual intercourse. The trial court also found that the respondent was responsible for the consequences of his act of sexual intercourse and was under an obligation to care, support, and nurture the child. The trial court concluded that the respondent had not taken any steps to meet his obligations between the time of the adjudication of neglect and the filing of the State's termination petition. The trial court therefore concluded that the State had proved the allegations contained in its petition.

In making its ruling, the trial court also noted that the respondent had failed to register his name with the Putative Father Registry maintained by the Department of Children and Family Services (750 ILCS 50/12.1 (West 2000)). The trial court commented:

> "I believe that as a result of the act of sexual intercourse, that one must know or should know of the possibility of the conception of a child. And so, as the statute is structured, and as the putative father registry states, it is the obligation of the individual father in Illinois to register; and the reason that is done is so that in the future, if we need to try to contact them concerning their child,

that we *** can make that contact. And in this particular instance, the fact that [the respondent] did not follow through on the consequences of his act of sexual intercourse with the mother does not alleviate him of his parental responsibilities to follow through, care for and support and nurture the child."

Following a best interests hearing, the trial court found that it was in Tinya W.'s best interest to terminate the respondent's parental rights. This court subsequently granted the respondent leave to file a late notice of appeal.

The respondent's sole argument on appeal is that the trial court erred in terminating his parental rights. The respondent argues that the trial court erred in invoking the provisions of the Putative Father Registry contained in section 12.1 of the Adoption Act (750 ILCS 50/ 12.1 (West 2000)) to terminate his parental rights. The respondent argues that section 12.1 pertains only to the notification requirements in adoption proceedings and has no application in a proceeding to terminate parental rights brought under the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 2000)). Additionally, the respondent argues that his constitutional rights were violated when the trial court terminated his parental rights based upon conduct that occurred before the respondent was made aware of his paternity.

■ Parental rights and responsibilities, despite their societal and personal importance, may be terminated when a parent is adjudicated unfit pursuant to the statute. *In re A.S.B.*, 293 Ill. App. 3d 836, 843 (1997). However, because each case involving parental fitness is *sui generis*, courts generally do not make factual comparisons to other cases. *A.S.B.*, 293 Ill. App. 3d at 843. To effectuate the termination of parental rights, the State need prove only one statutory fact of unfitness by clear and convincing evidence. *A.S.B.*, 293 Ill. App. 3d at 843. In other words, a reviewing court need not consider other findings of unfitness when there is sufficient evidence to satisfy any one statutory ground. *A.S.B.*, 293 Ill. App. 3d at 843. A finding of parental unfitness is entitled to great deference on review and will not be disturbed unless it is against the manifest weight of the evidence. *A.S.B.*, 293 Ill. App. 3d at 843.

■ We agree with the respondent that it was improper for the trial court to consider the respondent's failure to register his name with the Putative Father Registry in making its fitness determination. The registry was created by the provisions of the Adoption Act, and its purpose is to assist in the identification and location of a putative father of a minor child who is, or who is expected to be, the subject of an adoption proceeding, in order "to provide notice of such proceeding to the putative father." 750 ILCS 50/12.1 (West 2000). By failing to

register within 30 days after a child's birth, a putative father is subsequently barred from bringing or maintaining any action to assert any interest in the child. 750 ILCS 50/12.1(g) (West 2000). The registry was created by the legislature in order to bring finality to adoption proceedings and to preclude a putative father from later challenging the legality of an adoption because he had no knowledge of the proceeding. See *In re Petition to Adopt O.J.M.*, 293 Ill. App. 3d 49, 67 (1997).

The instant case was not initiated under the Adoption Act, but was instead brought as a neglect proceeding pursuant to the provisions of the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 2000)). The respondent's identity was known from the onset of the proceeding, and the State subsequently filed a petition to terminate his parental rights. Therefore, the question before the trial court was not whether the respondent had any rights in an adoption proceeding but, instead, whether the respondent was an unfit parent and whether his parental rights should be terminated. See 705 ILCS 405/2—29 (West 2000). The specific grounds upon which a parent may be found unfit are provided by statute. See 750 ILCS 50/1(D) (West 2000). A putative father's failure to register his name with the Putative Father Registry is not a statutory ground upon which the father may be found unfit. Accordingly, we believe that the trial court erred in considering this factor in rendering its fitness determination.

However, despite this error, we nonetheless believe that the evidence presented at the hearing supported the trial court's finding of unfitness. Here, the respondent has had no contact whatsoever with Tinya W. from the date of her birth. Nor was any evidence introduced demonstrating that the respondent provided any financial support or otherwise expressed any interest in her welfare. Such evidence certainly supports the trial court's findings that the respondent abandoned Tinya W. and failed to demonstrate a reasonable degree of interest, concern, or responsibility for her welfare.

The respondent asserts that it was improper for the trial court to consider his conduct prior to the time that he was contacted by Mackowiak, as he was not aware of his paternity during this time. Initially, we note that the respondent did not appear at the hearing and did not introduce any evidence demonstrating that he was unaware of his paternity. However, even assuming that the respondent was unaware of his paternity, the case law does not support his argument. For example, in *In re A.S.B.*, 293 Ill. App. 3d 836, 844 (1997), a putative father argued that it was improper for the trial court to terminate his parental rights because the natural mother had misrepresented to him that he was not the father of the child. The father argued that he had

been "thwarted" from demonstrating any interest, concern, or responsibility for his child because he was not aware of the child's existence. *A.S.B.*, 293 Ill. App. 3d at 844. The court rejected this argument, holding that the law imposed an unequivocal and substantial burden upon parents to demonstrate a reasonable degree of interest, concern, or responsibility for their children. *A.S.B.*, 293 Ill. App. 3d at 844. The court explained that what a putative father believes in his own mind is relevant only if he makes some effort to show interest or concern for the child. *A.S.B.*, 293 Ill. App. 3d at 844; see also *In re Adoption of A.S.V.*, 268 Ill. App. 3d 549, 558 (1994); *In re Adoption of J.R.G.*, 247 Ill. App. 3d 104, 110 (1993).

In this case, there is no evidence that the respondent ever made any effort to show any degree of interest, concern, or responsibility for Tinya W.'s welfare. Indeed, there is no evidence appearing in the record indicating that the respondent took any interest in Tinya W. even after he purportedly first learned of her existence. As already noted, the respondent was not present at the hearing on the State's petition to terminate his parental rights. In the absence of any effort on the respondent's part, we cannot conclude that he has evinced a reasonable degree of interest in Tinya W. See *A.S.B.*, 293 Ill. App. 3d at 844. As the evidence supported at least one of the grounds of unfitness alleged by the State, we hold that the juvenile court did not err in terminating the respondent's parental rights.

■ Finally, the respondent briefly maintains that his constitutional right to due process was violated when the trial court's fitness determination was predicated upon conduct that occurred before he was provided any services to correct his parental shortcomings. However, the respondent has insufficiently articulated his argument to facilitate our review of this issue in violation of Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)). Although the respondent cites to *Santosky v. Kramer*, 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982), and various provisions of the Juvenile Court Act, he does not explain how these authorities establish a constitutional violation in the instant case. We are therefore unable to respond to this argument and find that it has been waived. See *Vernon Hills III Ltd. Partnership v. St. Paul Fire & Marine Insurance Co.*, 287 Ill. App. 3d 303, 311 (1997).

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and BYRNE, JJ., concur.