No. 2--01--1479 
 

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

In re
 KENNETH F., JUSTIN S., 
) Appeal from the Circuit

and ANGEL F., Minors
, 
) Court of Winnebago County.

)

) Nos. 95--J--762

)     97--JA--200

)     97--JA--201

)

(The People of the State of ) 

Illinois, Petitioner- ) Honorable

Appellee,
 v. Christy F., ) Janet Clark Holmgren,

Respondent-
Appellant).
 ) Judge, Presiding.

JUSTICE GROMETER delivered the opinion of the court:

Respondent, Christy F., appeals the orders of the circuit court of Winnebago County finding her an unfit parent and terminating her parental rights to three of her children, 
Kenneth F., Justin S.,
 and Angel F.  On appeal, respondent raises the following two issues: (1) whether respondent was properly admonished as required by section 1--5(3) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1--5(3) (West 2000)), and (2) whether the trial court conducted a proper permanency review hearing as required by section 2--28 of the Juvenile Court Act (705 ILCS 405/2--28 (West 2000)).  For the reasons that follow, we affirm.

A trial court's determination that a parent is unfit is entitled to great deference and will not be disturbed unless it is contrary to the manifest weight of the evidence or constitutes a clear abuse of discretion.  
In re A.A.
, 324 Ill. App. 3d 227, 234 (2001).  Nevertheless, questions of law are reviewed 
de novo
.  
In re A.J.
, 323 Ill. App. 3d 607, 609-10 (2001).  When a trial court bases a finding of unfitness upon more than one ground, we must affirm if any one of the grounds justifies the finding.  
In re C.L.T.
, 302 Ill. App. 3d 770, 772 (1999).

In the instant case, the trial court found respondent unfit on two of the grounds defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2000)).  First, based upon respondent's sporadic visitation with the children, the trial court found that respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare.  See 750 ILCS 50/1(D)(b) (West 2000).  Second, the trial court found that respondent had failed to make reasonable efforts or reasonable progress toward having the children returned to her.  See 750 ILCS 50/1(D)(m) (West 2000).  We must affirm if either of these grounds warrants a finding of unfitness (
C.L.T.
, 302 Ill. App. 3d at 772), and we will thus focus on the former ground, where relevant, in the balance of this opinion.  Relevant facts will be discussed as they pertain to the issues raised by the parties.

I. ADMONISHMENTS

We will first address respondent's argument that the trial court failed to properly admonish her that she risked the termination of her parental rights if she did not comply with service plans, cooperate with the Department of Children and Family Services (DCFS), and correct the conditions that required her children to be in care.  See 705 ILCS 405/1--5(3) (West 2000).  Respondent asserts that the record contains no such admonishment.  Implicit in respondent's argument is the premise that if she had been properly admonished as to this possibility, she would have altered her behavior in such a manner that would have prevented the termination of her parental rights.  Given the state of the record, we find this premise untenable.

Section 1--5(3) of the Juvenile Court Act provides, in pertinent part, the following:

"If the child is alleged to be abused, neglected or dependent, the court shall admonish the parents that if the court declares the child to be a ward of the court and awards custody or guardianship to the Department of Children and Family Services, the parents must cooperate with the Department of Children and Family Services, comply with the terms of the service plans, and correct the conditions that require the child to be in care, or risk termination of their parental rights." 705 ILCS 405/1--5(3) (West 2000).

We considered this portion of the Juvenile Court Act and its predecessors in 
In re Andrea F.
, 327 Ill. App. 3d 1072 (2002).  In that case, we reversed an order of a trial court because the trial court failed to admonish the respondent that he could lose his parental rights if he did not cooperate with DCFS.  
Andrea F.
 is factually distinguishable from the instant case.

Before proceeding further
, however, we note that respondent has waived this argument.  On January 14, 1998, the trial court adjudicated the minors neglected.  Neither a transcript of this proceeding nor a bystander's report (see 166 Ill. 2d R. 323(c)) appears in the record.  The burden is on the appellant to present a sufficient record on appeal to substantiate any claims of error.  
Foutch v. O'Bryant
, 99 Ill. 2d 389, 391-92 (1984).  Any doubts arising as a result of omissions in the record must be resolved against the appellant.  
Haudrich v. Howmedica, Inc.
, 169 Ill. 2d 525, 546-47 (1996).  Given this omission, we must presume that the trial court acted properly and that respondent received the proper admonishments.

Even if we were to deem this argument properly preserved for review, respondent would not prevail, for the error that she complains of was harmless.  In 
Andrea F.
, before holding that the trial court's failure to properly admonish the respondent required a reversal, we observed the following:

"Here, the record fails to disclose that respondent was ever admonished that he could lose his parental rights to his child if he failed to cooperate with DCFS and comply with the service plans.  Without a warning of the risks, at least by the time of the dispositional hearing, respondent could not appreciate the importance of compliance."  
Andrea F.
, 327 Ill. App. 3d at 1079.

Thus, in 
Andrea F.
, the record did not demonstrate that respondent was aware of the importance of compliance.  By implication, had the respondent been aware of the consequences of noncompliance, he may well have complied with his service plans.  Conversely, where the record demonstrates that, even if properly admonished, a respondent would not have complied with a service plan or cooperated with DCFS, the failure to admonish the respondent results in no prejudice and the error is harmless.

In 
Andrea F.
, this court relied primarily on 
In re Smith
, 77 Ill. App. 3d 1048 (1979) and 
In re Moore
, 87 Ill. App. 3d 1117 (1980), which interpreted a predecessor to section 1--5(3) of the Juvenile Court Act.  Both 
Smith
 and 
Moore
 recognize that a harmless-error analysis is appropriate when a trial court fails to properly admonish a respondent in a proceeding such as the present one.  In 
Smith
, the court observed that the respondent, "apparently unaware that her son could be taken from her, was unprepared to challenge [the] evidence or to present evidence to the contrary."  
Smith
, 77 Ill. App. 3d at 1054.  Thus, the 
Smith
 court was not concerned with admonishments merely for their own sake; it reversed because the failure to admonish the respondent had a tangible effect on the outcome of the proceedings.  In other words, the error was prejudicial.  We also note that the 
Smith
 court stated that a nonprejudicial defect in the pleadings would not warrant reversal.  
Smith
, 77 Ill. App. 3d at 1052.  Pleadings are like admonishments in that they are intended to put parties on notice of things that are important to the conduct of an action.  
Johnson v. Illini Mutual Insurance Co.
, 18 Ill. App. 2d 211, 221 (1958) (Reynolds, J., dissenting); J. Parness, Illinois Civil Procedure §3--1 (1998).

The 
Moore
 court expressly recognized that a harmless-error analysis is appropriate when a court fails to properly admonish a respondent, stating, "While under the statute it is clearly error if the court fails to admonish the parents of their rights, it does not follow that such error would require reversal in every case."  
Moore
, 87 Ill. App. 3d at 1120.  The court also noted it was unable to determine from the record whether the respondent was aware of the nature of the proceeding.  
Moore
, 87 Ill. App. 3d at 1121.  Hence, the court did not simply consider whether the trial court admonished the respondent; it inquired into respondent's actual knowledge regarding the nature of the proceedings.  The 
Moore
 court made several other observations that demonstrate that it was concerned with respondent's actual knowledge.  First, 
it observed that "[n]either the trial court 
nor counsel
 addressed respondent as to her rights at any time."  (Emphasis added.)  
Moore
, 87 Ill. App. 3d at 1121.  Second, it noted that "the petition for adjudication of wardship failed to apprise respondent of the possibility of losing permanent custody of her child."  
Moore
, 87 Ill. App. 3d at 1121.  Third, the court stated that it would not "presume such an awareness from the mere fact that respondent was represented by counsel."  
Moore
, 87 Ill. App. 3d at 1121-22.  The 
Moore
 court was examining the record to see if it could locate something that would have put respondent on actual notice regarding the nature of the proceedings despite the lack of admonishments.  Considering its statement that all such errors need not require reversal, it is apparent that, had such a collateral source of knowledge been located, the 
Moore
 court would not have reversed.

In light of these cases, we conclude that a trial court's failure to admonish a respondent is subject to a harmless-error analysis.  In proceedings of the present kind, where a primary purpose is to protect the best interests of the children, a harmless-error analysis is particularly appropriate.  See 
Smith
, 77 Ill. App. 3d at 1052.  An error that prejudices no one should not prevent children, who are the objects of these proceedings, from attaining some level of stability in their lives.

We remain cognizant that "[t]he interest of parents in the care, custody, and control of their children is perhaps the oldest of the fundamental liberty interests recognized."  
Andrea F.
, 327 Ill. App. 3d at 1076, citing 
Troxel v. Granville
, 530 U.S. 57, 65, 147 L. Ed. 2d 49, 56, 120 S. Ct. 2054, 2060 (2000).  This interest is protected by the due process clause.  
Troxel v. Granville
, 530 U.S. at 65, 147 L. Ed. 2d at 56, 120 S. Ct. at 2060.  We also recognize that section 1--5(3) of the Juvenile Court Act exists to safeguard this interest.  
Cf.
 
In re Cathy M.
, 326 Ill. App. 3d 335, 341-42 (2001) (holding that section 2--102(a) of the Mental Health and Developmental Disabilities Code (405 ILCS 5/2--102(a)(West 2000)), which requires an involuntary recipient of psychotropic medications to be advised in writing of the medications' side effects, protects the recipient's due process rights and thus declining to find the statutory right easily waived).  It is also true, however, that even an error of constitutional dimension may be deemed harmless.  
People v. Lofton
, 194 Ill. 2d 40, 61 (2000).  In order to find such an error harmless, a court must determine that the error is harmless beyond a reasonable doubt.  
Lofton
, 194 Ill. 2d at 61.  An error may be harmless if it did not contribute to the outcome of an action, if overwhelming evidence supports the order of the trial court, or if the error pertained to evidence that was merely cumulative or corroborative of other evidence.  
People v. Fletcher
, 328 Ill. App. 3d 1062, 1071-72 (2002).

In the present case, if we assume 
arguendo
 that the trial court failed to admonish respondent, the record demonstrates beyond a reasonable doubt
 that the error would not have affected the outcome of the proceedings.  We find it inconceivable that respondent, had she been admonished properly, would have changed her behavior such that her parental rights would not have been terminated.  Thus, the alleged error did not contribute to the outcome of the proceedings.  A review of the record compels this conclusion.

On November 21, 1995, respondent was admonished that, if the State proved the allegations contained in a petition alleging that Angel F. was a neglected minor, Angel F. could be made a ward of the court and be removed from respondent's custody.  Respondent was also advised of her procedural and trial rights.

On May 11, 1998, the trial court, addressing respondent, stated the following:

"Okay.  That's my concern in reading the reports, because the cases have been backpedaling it seems in every instance.  We've gone from a CUS to an adjudication.  And I agree with the recommendation that guardianship and custody be transferred to the Department.  There's really only one person in this room that can stop the backward motion, and that's you, Christy, and I don't know how else to say it.  I think everyone has been pretty clear on what you need to do, and that's just follow through, do what's asked of you, do it when it's asked of you.  I don't know if you're working yet or not, but it seems like you've got the time and the ability to do the things that are asked of you by the Department, and it's just a question of follow through.  The case came in on a basis where there was a concern because of lack of follow-through, and if that's going to continue to be the circumstances, I'm not sure where the case is gonna go.  You've been involved in this courtroom since 1995, and as I said, over the last three years you're losing ground and I don't know why.  So I would encourage you to work with Gwen [from DCFS], to follow through with Gwen.  The CASA [court-  appointed special advocates] report is very positive about where the kids are in her home, so I think it's appropriate that they remain with you, but if things just kind of stay where they're staying, I can't guarantee that that's going to be the case.  It's really up to you."

Thus, at the very least, respondent was advised that noncompliance could lead to the children being removed from her custody.

On April 6, 1999, the court advised respondent that it was very likely that it would have to "remove the children" if respondent did not attend counseling as required by her service plan.  The court then stated that respondent was "expected to cooperate 100 percent" with DCFS and CASA.

On July 2, 1999, in open court with respondent present, an attorney for the State said, "She's not following through with the service plan.  Placement is contingent upon her following through with the service plan."  Shortly thereafter, the trial court noted that "Christy's been admonished by this Court and counsel in the past about the importance of compliance and the reasons and rationale."

On February 22, 2000, respondent's attorney made the following statement:

"I have spoken with [Christy] and explained to her the situation.  She has indicated to me that she has rearranged her work schedule so that she can step up and take more responsibility, as far as working towards her service plan and hopefully maintaining her parental rights.  I have explained to her the consequences if she does not."

Hence, at least by this date, respondent was aware that her parental rights were in jeopardy and contingent upon her complying with her service plan.  In the same hearing, the trial court ordered that "visitation shall not occur if mother is not completely and fully cooperative with services."  Thus, respondent also knew that she would not be allowed to visit her children if she did not comply with her service plan.

On May 15, 2000, the trial court advised respondent of the following:

"With regard to involvement in services, what the State will be filing, Christy, is a motion asking the Court to consider termination of parental rights.

That doesn't mean that's going to necessarily happen.  It's very important as your attorney has indicated that you follow through with the services that are recommended for you, to participate particularly in [counseling at] Janet Wattles, --that's been an issue throughout the case--and anything else that might be suggested to you by the case worker.

* * *

Merely bringing the question to the table, that doesn't mean that the question is resolved, so it's very important, particularly now as your counsel indicated, there is a great sense of urgency that you follow through and demonstrate you are dedicated to attempting to have the children returned to your care."

Again, in this address to respondent, the nexus between retention of her parental rights and compliance with her service plan was made clear to her.

On August 4, 2000, the court advised respondent that the State had filed petitions for termination of her parental rights.  The court emphasized to respondent that it was not too late for her to work on her service plan.  The court stated, 
inter alia
, "You have an opportunity to demonstrate your interest and your desire to have your children returned to your care."

Since 1995, respondent was made aware of various consequences of failing to comply with her service plan and cooperate with DCFS.  Respondent's behavior remained unsatisfactory despite the fact that she knew she could lose custody of her children.  It remained unsatisfactory despite the fact that she knew visitation could be restricted.  Further, at least by February 2000, it remained unsatisfactory despite the fact that she knew her parental rights could be terminated.  For example, Gwen Anderson, a DCFS caseworker, testified that since November 1999 respondent never visited her children on a regular basis and that respondent did not want to see all four of her children at the same time.  Anderson also added that, from November 1999 through June 2000, respondent visited her children approximately three times.  Respondent was entitled to weekly visits during 2000.

Given that her behavior did not change after respondent clearly had actual knowledge regarding the risk of termination, we find it inconceivable that her behavior would have changed had she been advised at an earlier time that her parental rights could be terminated.  The trial court based its finding that respondent failed to maintain a reasonable degree of interest, concern, or responsibility as to her children's welfare upon her failure to regularly visit the children.  This deficiency continued through at least June 2000.  Accordingly, the alleged failure to admonish respondent had no effect on the outcome of these proceedings and was therefore harmless.

We conclude that any error in failing to admonish respondent was harmless as to the first basis upon which the trial court found respondent to be an unfit parent.  Since we must affirm if any one of the bases articulated by the trial court justifies the finding of unfitness (
C.L.T.
, 302 Ill. App. 3d at 772), we must affirm in the instant case.

II. PERMANENCY REVIEW HEARING

Respondent next argues that the decision of the trial court must be reversed because the trial court did not conduct permanency review hearings in the manner required by the Juvenile Court Act.  See 705 ILCS 405/2--28(2) (West 2000).  Respondent raises the following three complaints as to the conduct of the hearing: (1) she contends that the hearing was not held in a timely fashion, (2) she asserts that the hearing was deficient in that she was denied an opportunity to present evidence and cross-examine witnesses, and (3) she argues that the trial court failed to make adequate written findings as to why the particular permanency goal was selected.  Respondent has waived her second contention by failing to cite any authority in support of her position.  See 
Fuller v. Justice
, 117 Ill. App. 3d 933, 942 (1983).

Respondent's first argument raises an issue of statutory construction, which we review 
de novo
 (
Miller v. Penrod
, 326 Ill. App. 3d 594, 596 (2001)).  The statute in question provides, in relevant part: "The initial hearing shall be held (a) within 12 months from the date temporary custody was taken, (b) if the parental rights of both parents have been terminated ***, within 30 days of the order for termination of parental rights and appointment of a guardian with power to consent to adoption."  705 ILCS 405/2--28(2) (West 2000).  At issue here is the meaning of the phrase "the date temporary custody was taken."  Respondent contends that a timely permanency hearing was not held because an order granting custody of the minors to DCFS was entered on May 11, 1998, and the first permanency review hearing was held over two years later on May 15, 2000.  Petitioner counters that the May 15, 2000, hearing was timely because it occurred within 12 months of the minors actually being removed from respondent's custody.

We agree with petitioner.  The primary goal of statutory construction is to ascertain the legislature's intent.  
Country Mutual Insurance Co. v. Universal Underwriters Insurance Co.
, 316 Ill. App. 3d 161, 164 (2000).  The plain language of the statute is generally the most reliable indicator of that intent.  
Premier Property Management, Inc. v. Chavez
, 191 Ill. 2d 101, 121 (2000).  In subsection (b) of this provision, the legislature provided that a permanency review hearing must occur "within 30 days of the 
order
 for termination of parental rights."  (Emphasis added.)  705 ILCS 405/2--28(2) (West 2000).  In subsection (a), it provided that the 12-month period began to run on "the date temporary custody was 
taken
."  (Emphasis added.)  705 ILCS 405/2--28(2) (West 2000).  "Order" connotes a legal action; "taken" does not.  Hence, we agree with petitioner's interpretation that the relevant date for determining whether the permanency review hearing was timely was the date respondent lost actual physical custody of the minors.

In the present case, two of respondent's children were placed in foster care in August 1999.  The other two were removed from her home in November 1999.  Thus, the May 15, 2000, permanency review hearing occurred within 12 months of the date temporary custody was taken.

Respondent's final contention is that the trial court did not make adequate written findings as mandated by section 2--28(2) of the Juvenile Court Act.  705 ILCS 405/2--28(2) (West 2000).  Specifically, respondent complains that the trial court's written order did not address what services were previously offered and found unsuccessful, the reason previous services failed, the availability of services currently needed, and whether the needed services exist.  See 705 ILCS 405/2--28(2) (West 2000).  We disagree.

In 
In re S.E.
, 319 Ill. App. 3d 937, 944-45 (2001), the reviewing court declined to remand a cause so that the trial court could enter written findings pursuant to section 2--28(2) of the Juvenile Court Act.  In rejecting the appellant's argument, the reviewing court noted that the basis for the trial court's decision was shown by the trial court's oral pronouncements made during the permanency review hearing.  
S.E.
, 319 Ill. App. 3d at 944.  Similarly, in the instant case, the basis for the trial court's decision is made clear by the trial court's remarks during the permanency review hearing.

In its oral ruling, the trial court relied on the reports submitted to it on the day of the hearing.  DCFS and CASA both submitted reports to the trial court on May 15, 2000.  The DCFS report also contained a report from a psychologist who assessed one of the minors.  A review of these reports adequately shows the basis for the trial court's decision.

More fundamentally, if we were to remand on this issue, we would remand for the limited purpose of allowing the trial court to enter more specific written findings.  Respondent does not explain how she was prejudiced by the trial court's failure to include its findings in the written order.  Under such circumstances, we would be loath to remand "solely to allow the trial court to reiterate its findings in a written order."  
In re Z.Z.
, 312 Ill. App. 3d 800, 804 (2000); see also 
In re K.S.
, 317 Ill. App. 3d 830, 834 (2000).

III. CONCLUSION

In light of the foregoing, the orders of the circuit court of Winnebago County terminating respondent's parental rights are affirmed.

Affirmed.

O'MALLEY and 
BYRNE
, JJ., concur.