*In re* H.D., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Ebony Britt, Respondent-Appellant).

Fourth District    No. 4—03—0206

Opinion filed September 30, 2003.

Daniel B. Kennedy, of Champaign, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Jason P. Young, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE TURNER delivered the opinion of the court:

In April 2001, the State filed a petition for adjudication of wardship with respect to H.D., the minor child of Jeffrey Dillon and respondent, Ebony Britt. In July 2001, the trial court adjudicated H.D. a ward of the court and ordered custody and guardianship placed with the Illinois Department of Children and Family Services (DCFS). In June 2002, the State filed a petition to terminate the parental rights of respondent and Dillon. In January 2003, the trial court found the parents unfit. In February 2003, the court found it in H.D.'s best interest that parental rights be terminated. Dillon is not a party to this appeal.

On appeal, respondent argues (1) the trial court's findings should be invalidated because of violations of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. §§ 1901 through 1923 (2000)), (2) the State's petition to terminate parental rights was defective because it did not clearly and obviously state that respondent could permanently lose her parental rights, (3) the trial court erred in considering evidence outside the permissible time frames, and (4) the court's best-interest finding was against the manifest weight of the evidence. We affirm.

## I. BACKGROUND

In April 2001, the State filed a petition for adjudication of ward-

ship, alleging H.D., born November 30, 1999, was a neglected minor pursuant to section 2—3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2—3(1)(b) (West 2000)) because her mother exposed her to an injurious environment due to inadequate supervision. At the shelter-care hearing, the trial court asked respondent if H.D. had "any American/Indian blood in her." Respondent indicated that the grandfather of H.D.'s father was "Indian," but she did not know what tribe. The court ordered the State to notify tribal authorities. The court also entered a temporary custody order, finding probable cause to believe H.D. was a neglected minor. The court ordered temporary custody of H.D. be placed with DCFS.

In its June 2001 adjudicatory order, the trial court found H.D. neglected by reason of lack of supervision. In its July 2001 dispositional order, the court found respondent to be unfit, made H.D. a ward of the court, and granted custody and guardianship to DCFS.

In June 2002, the State filed a petition to terminate respondent's parental rights. The State alleged respondent was an unfit person because she (1) failed to make reasonable efforts to correct the conditions that were the basis for the removal of H.D. (750 ILCS 50/1(D)(m)(i) (West 2002)) and (2) failed to make reasonable progress toward the return of the minor within the initial nine-month period of the adjudication of neglect (July 11, 2001, through April 11, 2002) (750 ILCS 50/1(D)(m)(ii) (West 2002)).

In October 2002, the trial court conducted a hearing on the motion to terminate parental rights. Respondent testified she started using marijuana when she was 12 years old but stopped using in July 2002. She also stated she attended treatment and counseling "sporadically."

Donna Wilson, a counselor with the Prairie Center Health Systems, testified DCFS referred respondent to her. Respondent told Wilson she could not commit to any regular treatment that would be on a regular basis because she was depressed. Wilson canceled the counseling relationship because of respondent's lack of attendance and anger issues.

Rose Adkisson, a counselor, testified she worked with respondent between April 2001 and May 2002. She stated she wanted to address respondent's issues with anger and depression. Adkisson noted respondent failed to attend her weekly counseling sessions on numerous occasions, and thus respondent did not successfully complete counseling with her.

Macey Ingram, a DCFS investigator and former caseworker, testified she participated in setting forth goals in respondent's client service plans. Ingram stated respondent was cooperating with substance-

abuse treatment between December 2001 and March 2002, but "her attendance wasn't as good as it had been."

Jennifer Gerrib, a child-welfare specialist with Lutheran Social Services, testified she took over casework responsibilities in this case in March 2002. She stated a goal of respondent's service plan was to successfully complete substance-abuse treatment. Respondent did not provide any proof to Gerrib that she completed substance-abuse counseling.

In December 2002, the trial court resumed the hearing to receive evidence of whether the Bureau of Indian Affairs had been contacted regarding this case pursuant to the ICWA. Following arguments, the court ordered DCFS to notify the Bureau of Indian Affairs and continued the matter.

In January 2003, the trial court found the State had come into compliance with the ICWA by way of notice to the Bureau of Indian Affairs and the lack of any helpful information from H.D.'s father. Thereafter, the court found both respondent and H.D.'s father unfit by clear and convincing evidence. Specifically, the court noted respondent's issues centered on substance abuse, her extreme anger, homelessness, and unemployment. The court found respondent still needed to deal with those issues, had not established stability as to employment or residency, refused to commit to substance-abuse treatment on a regular basis, tested positive for cannabis in April and May 2002, and failed to address her anger problem.

In February 2003, the trial court held the best-interest hearing. Following the presentation of witnesses and counsel's arguments, the court found it in H.D.'s best interest that respondent's parental rights be terminated, as well as those of H.D.'s father. This appeal followed.

## II. ANALYSIS

### A. Indian Child Welfare Act

■ Respondent argues the trial court's findings must be invalidated because the rights guaranteed by the ICWA were violated. We disagree.

Congress enacted the ICWA to

"protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum [f]ederal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." 25 U.S.C. § 1902 (2000).

The foundation of the ICWA centers on the provisions relating to

jurisdiction over Indian child custody proceedings. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 36, 104 L. Ed. 2d 29, 38, 109 S. Ct. 1597, 1601 (1989). "The ICWA seeks to provide Native American tribes with the ability to preserve their culture and identity by granting tribal courts either exclusive or concurrent jurisdiction over child custody and adoption matters involving an 'Indian child.' " *In re M.S.*, 302 Ill. App. 3d 998, 1001, 706 N.E.2d 524, 527 (1999), citing *In re Adoption of S.S.*, 167 Ill. 2d 250, 257, 657 N.E.2d 935, 940 (1995). Under section 1911(b) of the ICWA, the state court and tribal court have concurrent jurisdiction over cases involving foster-care placement or termination of parental rights as to an Indian child not domiciled or residing within the reservation of the Indian child's tribe. 25 U.S.C. § 1911(b) (2000); *In re C.N.*, 196 Ill. 2d 181, 203-04, 752 N.E.2d 1030, 1043 (2001). The state court must transfer the proceedings to the tribal court upon the petition of either parent, an Indian custodian, or the Indian child's tribe, absent good cause to the contrary, objection by either parent, or declination of jurisdiction by the tribal court. 25 U.S.C. § 1911(b) (2000).

The ICWA further provides that "[i]n any involuntary proceeding in a [s]tate court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster[-]care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe *** of the pending proceedings and of their right of intervention." 25 U.S.C. § 1912(a) (2000). The ICWA defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4) (2000). A violation of section 1911 or 1912 of the ICWA may warrant invalidation of the child custody proceedings. *C.N.*, 196 Ill. 2d at 204, 752 N.E.2d at 1043.

> "In the absence of a conclusive finding of the child's eligibility in a particular tribe, either by that tribe or by the Bureau of Indian Affairs, the trial court must determine if the child is an 'Indian child.' [Citation.] In fact, the court must initially determine if a child is an 'Indian child' within the meaning of the ICWA. [Citation.]" *M.S.*, 302 Ill. App. 3d at 1001, 706 N.E.2d at 527.

In the case *sub judice*, the trial court did not make a determination as to whether H.D. was an "Indian child." Instead, the court assumed the ICWA applied and ordered notice to be given to tribal authorities. However, the ICWA does not apply unless it is established that the minor is an "Indian child." *In re Stiarwalt*, 190 Ill. App. 3d 547, 551, 546 N.E.2d 44, 47-48 (1989), citing *In re Appeal in Maricopa*

*County Juvenile Action No. A-25525,* 136 Ariz. 528, 531, 667 P.2d 228, 231 (1983). The trial court should not assume the ICWA applies without establishing whether the minor is an "Indian child," and this court must therefore determine whether the ICWA applies here. See *Maricopa County,* 136 Ariz. at 532, 667 P.2d at 232.

"The proper course of action in the initial proceedings below would have been for the trial court to explicitly enter findings regarding the status of the child as an Indian or non-Indian as early in the custody proceedings as possible. [Citation.] The trial court should not have assumed throughout the proceedings below that the ICWA applied without ascertaining with proof and on the record that (1) the child is enrolled in a tribe or that (2) the child is a biological child of an Indian who is a member of a tribe and that the child is eligible for membership in the tribe as well." *Maricopa County,* 136 Ariz. at 532, 667 P.2d at 232.

■ In response to a question by the trial court, respondent stated her belief that the grandfather of H.D.'s father was Indian, but she did not know what tribe. No information was given that H.D. was a member of an Indian tribe or was eligible for membership in an Indian tribe and the biological child of an Indian tribe member. See *Stiarwalt,* 190 Ill. App. 3d at 551, 546 N.E.2d at 48 (the ICWA "does not apply merely because the children are 'Indian,' but applies only where there is proof that the children are members, or are eligible for membership, in an Indian tribe, as defined by the [ICWA]"). The State contacted the Bureau of Indian Affairs, which indicated the scant amount of information on any Native American status of H.D. would lead it to not intervene in the case or be able to make any confirmation as to H.D.'s status as an "Indian child." As neither respondent nor H.D.'s father presented evidence to support a finding that H.D. was an "Indian child" or a part of an Indian tribe, the ICWA does not apply in this case. See *S.S.,* 167 Ill. 2d at 265, 657 N.E.2d at 943 (Heiple, J., concurring) (where the minor children had no existing Indian family and were never part of an Indian cultural setting or resided on a reservation, no justification for applying the ICWA exists).

### B. The State's Petition To Terminate Parental Rights

Respondent argues the State's petition to terminate parental rights was defective because it did not "clearly and obviously" state that respondent could "permanently" lose her parental rights, thereby requiring reversal. We disagree.

■ Initially, the State argues respondent forfeited her argument on this issue by failing to object to the alleged error at the trial court level. The principles of forfeiture apply to proceedings conducted pursuant to the Juvenile Court Act. See *In re E.M.,* 295 Ill. App. 3d

220, 225, 692 N.E.2d 431, 434 (1998). Further, appeals from final judgments under the Juvenile Court Act are governed by the civil rules of procedure. 134 Ill. 2d R. 660(b). Section 2—612(c) of the Code of Civil Procedure provides that "[a]ll defects in pleadings, either in form or substance, not objected to in the trial court are waived." 735 ILCS 5/2—612(c) (West 2002). Here, respondent did not object to the wording of the State's petition to terminate her parental rights at the trial court level or allow the trial court to remedy the alleged defect. Thus, respondent has forfeited her argument on appeal.

Even if we were to conclude respondent properly preserved her argument for review, reversal is not warranted. Respondent argues the State's motion to terminate her parental rights was defective because it did not "clearly and obviously" state she could "permanently" lose her parental rights. In support of her argument, respondent cites the Second District's decision in *In re Andrea D.*, 336 Ill. App. 3d 335, 783 N.E.2d 681 (2003), *remanded with directions to vacate & reconsider*, 204 Ill. 2d 655, 789 N.E.2d 303 (2003) (nonprecedential supervisory order). In that case, the State's petition to terminate the respondent's parental rights included a prayer for relief requesting parental rights be "terminated" and that the guardianship administrator be granted the power to consent to the minor's adoption with the consent binding on the parents. *Andrea D.*, 336 Ill. App. 3d at 338, 783 N.E.2d at 684. It is unclear whether the State's amended motion for termination of parental rights was included in its petition for adjudication of abuse or neglect. The respondent argued the State's petition was defective because the language did not include an explicit request for "permanent" termination of his parental rights, as he alleged was required by section 2—13(4) of the Juvenile Court Act. *Andrea D.*, 336 Ill. App. 3d at 338, 783 N.E.2d at 684.

■ Section 2—13(4) of the Juvenile Court Act provides:

"If termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under [s]ection 2—29 is sought, the petition shall so state. If the petition includes this request, the prayer for relief shall clearly and obviously state that the parents could permanently lose their rights as a parent at this hearing.

In addition to the foregoing, the petitioner, by motion, may request the termination of parental rights and appointment of a guardian of the person with power to consent to adoption of the minor under [s]ection 2—29 at any time after the entry of a dispositional order under [s]ection 2—22." 705 ILCS 405/2—13(4) (West 2002).

In its interpretation of section 2—13(4), the Second District

determined the statute required the State's petition to " 'clearly and obviously' state that the parents could 'permanently' lose their parental rights at the hearing" for the petition to be valid. *Andrea D.*, 336 Ill. App. 3d at 339, 783 N.E.2d at 684-85. Without the word "permanently" in the petition, the Second District concluded the State's petition was defective on its face and reversed the trial court's judgment. *Andrea D.*, 336 Ill. App. 3d at 339, 783 N.E.2d at 685. Respondent argues the State's motion in this case must meet the same fate as that in *Andrea D.* We disagree. We question the merits of respondent's argument that a prayer for relief requesting the termination of parental rights does not adequately convey that parental rights could be "permanently" lost, and we note the supreme court has directed the Second District to vacate its judgment in *Andrea D.* and reconsider its decision. Our holding, however, is based on our conclusion that the State's motion seeking a finding of unfitness and termination of respondent's parental rights was not governed by section 2—13(4) of the Juvenile Court Act.

Section 2—13(2) of the Juvenile Court Act provides the State's petition must allege the minor is abused, neglected, or dependent and, *inter alia,* set forth any factual allegations. 705 ILCS 405/2—13(2) (West 2002). Section 2—13(3) states the petition must allege it is in the minor's best interest that he be adjudged a ward of the court. 705 ILCS 405/2—13(3) (West 2002). If the termination of parental rights is sought, along with the appointment of a guardian with the power to consent to adoption under section 2—29 of the Juvenile Court Act, the petition is required to so state. 705 ILCS 405/2—13(4) (West 2002). If this relief is requested, the petition must "clearly and obviously" state the parents could "permanently" lose their parental rights. 705 ILCS 405/2—13(4) (West 2002). In addition, the petitioner may file a similar motion seeking termination and the appointment of a guardian "at any time after the entry of a dispositional order under [s]ection 2—22." 705 ILCS 405/2—13(4) (West 2002).

In our view, section 2—13 was meant to apply when the State files a single petition, asking the trial court to adjudicate the minor abused, neglected, or dependent, as well as seeking to terminate parental rights and the appointment of a guardian with the power to consent to the minor's adoption under section 2—29. The requirement that the petition's prayer for relief "clearly and obviously" state the parents could "permanently" lose their parental rights is not found in section 2—29, which allows for petitions to terminate parental rights and consent to the minor's adoption separate and apart from proceedings where the trial court has adjudicated the minor abused, neglected, or dependent and held dispositional hearings. Section 2—13(4)'s

requirement that the prayer for relief notify the parents of the possible permanent loss of their parental rights is necessary and warranted in a situation where the State alleges neglect and seeks termination in a more expedited fashion and in the same petition. In this case, however, the State proceeded in a separate and distinct manner pursuant to section 2—29, a less expedient fashion with multiple hearings and motions resulting in a lesser need for the notice required by section 2—13(4). Therefore, we find the required notice in section 2—13(4) does not apply in this case, and the State's motion was not facially defective. Moreover, we need not address what language is required in the State's prayer for relief when the State files a single petition, asking the trial court to adjudicate a minor abused or neglected, as well as seeking to terminate parental rights, because that issue is not presently before this court.

In construing a statute, a court should presume that the General Assembly "did not intend an absurdity, inconvenience, or injustice." *People v. Shanklin*, 329 Ill. App. 3d 1144, 1146, 769 N.E.2d 547, 548-49 (2002). Section 1—5(3) of the Juvenile Court Act requires the trial court to admonish parents in cases such as the one before us that they risk termination of their parental rights if they fail to comply with various conditions. 705 ILCS 405/1—5(3) (West 2002); *In re Kenneth F.*, 332 Ill. App. 3d 674, 680, 773 N.E.2d 1259, 1264 (2002) (section 1—5(3) acts as a safeguard to a parent's due process rights inherent in their fundamental liberty interest in the care, custody, and control of their children). In this case, respondent received oral and written admonishments that her parental rights could be terminated in the trial court's orders on first appearance, temporary custody, and adjudicatory matters. With this in mind, reversing a trial court's judgment to terminate parental rights based solely on the State's failure to use the word "permanently" in its motion, as respondent argues, would lead to unjust results. Respondent received more than adequate notice throughout the proceedings that her parental rights could be terminated, and "[a]n error that prejudices no one should not prevent children, who are the objects of these proceedings, from attaining some level of stability in their lives." *Kenneth F.*, 332 Ill. App. 3d at 679-80, 773 N.E.2d at 1264. Therefore, as the statutory language found in section 2—13(4) was not required in these proceedings, the wording of the State's motion does not warrant reversal of the trial court's judgment.

## C. The Trial Court's Consideration of Evidence

■ Respondent argues the trial court erred in considering evidence outside the permissible time frames set forth in the Juvenile Court

Act. Because termination of parental rights is a serious matter, the State must prove unfitness by clear and convincing evidence. *In re M.H.*, 196 Ill. 2d 356, 365, 751 N.E.2d 1134, 1141 (2001). A reviewing court accords great deference to a trial court's finding of parental unfitness, and such a finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Tinya W.*, 328 Ill. App. 3d 405, 408, 765 N.E.2d 1214, 1217 (2002). As the grounds for unfitness are independent, the trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds. *In re E.O.*, 311 Ill. App. 3d 720, 726, 724 N.E.2d 1053, 1058 (2000).

In this case, the State's two grounds of unfitness alleged respondent (1) failed to make reasonable efforts to correct the conditions that were the basis for the removal of H.D. from her and (2) failed to make reasonable progress toward the return of H.D. within the initial nine-month period of the adjudication of neglect (July 11, 2001, through April 11, 2002). The trial court found respondent unfit under both counts. In its ruling, the court indicated its consideration of respondent's positive drug test in May 2002 and its relevance to the reasonable efforts count. The court stated it could not consider the same information as to the reasonable progress count.

■ In *In re Brianna B.*, 334 Ill. App. 3d 651, 658, 778 N.E.2d 724, 731 (2002), this court held that "[w]hen making a determination of a parent's unfitness on the basis of failure to make reasonable efforts to correct the conditions that were the basis for removal of the child, the court may not consider any evidence beyond the statutorily prescribed nine months from the date of the adjudication of neglect." Here, the State acknowledges the trial court considered evidence outside the applicable time frame in regard to respondent's reasonable efforts. However, the court was clear in stating it could not consider the same information as to the reasonable progress allegation. Thus, the record indicates the court focused its reasonable progress ruling on the evidence of respondent's conduct during the applicable time frame, and any one ground of unfitness, "properly proven," is sufficient to find a parent unfit. *In re C.W.*, 199 Ill. 2d 198, 210, 766 N.E.2d 1105, 1113 (2002). As respondent does not contest the sufficiency of the court's ruling on the reasonable progress count, and as each count is independent of the other, we find remand is unnecessary.

### D. The Trial Court's Best-Interest Finding

Respondent argues the trial court's best-interest finding was against the manifest weight of the evidence. We disagree.

■ Courts will not lightly terminate parental rights because of the

fundamental importance inherent in those rights. *M.H.*, 196 Ill. 2d at 363, 751 N.E.2d at 1140. Once the trial court finds the parent unfit, "the parent's rights must yield to the child's best interest." *In re Tashika F.*, 333 Ill. App. 3d 165, 170, 775 N.E.2d 304, 307 (2002). A trial court's finding that termination of parental rights is in a child's best interest will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re M.F.*, 326 Ill. App. 3d 1110, 1115-16, 762 N.E.2d 701, 706 (2002). A determination is deemed to be against the manifest weight of the evidence "only if the opposite conclusion is clearly evident [citation] or the determination is unreasonable, arbitrary, or not based on the evidence presented [citation]." *In re D.F.*, 201 Ill. 2d 476, 498, 777 N.E.2d 930, 942-43 (2002).

In this case, the best-interest report indicated H.D. had been in foster care with her biological grandmother since April 2001. The report stated H.D. resided in a safe, stable home, and her foster parents were willing to provide her with the permanency she needs. On the other hand, Vicki Moss, respondent's addiction counselor, testified that although respondent had good participation in treatment and good progress as to her goals, she could not predict whether respondent would be successfully discharged from her program within a reasonable time period. The trial court found respondent had "a persistent pattern of minimizing incidents in regard to violence," as well as "a persistent pattern of nondisclosure," which could put H.D. at risk of harm. The court also heard evidence of possible safety concerns for H.D. pertaining to respondent's new paramour and her poor judgment in her personal relationships. The court noted H.D. "deserve[d] to have an assurance of stability," and the evidence presented did not indicate respondent could provide that stability in the foreseeable future. The court found it in H.D.'s best interest that respondent's parental rights be terminated, and we conclude that finding was not against the manifest weight of the evidence.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH, P.J., concurs.

JUSTICE COOK, specially concurring:

I agree the language used in the State's petition was sufficient to provide notice to respondent that the State sought to permanently terminate her parental rights. I disagree the notice provision of sec-

tion 2—13(4), requiring that the prayer for relief "clearly and obviously state that the parents could permanently lose their rights as a parent" (705 ILCS 405/2—13(4) (West 2002)), applies only to original petitions seeking to terminate parental rights, not to after-filed petitions. Such a holding is not required by the language of the Juvenile Court Act and serves only to further complicate an area of the law which is already difficult. Even without section 2—13(4), every petition for termination of parental rights should make it clear whether the parents could permanently lose their parental rights.