2020 IL App (1st) 200155-U

No. 1-20-0155

Fourth Division
June 4, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* A.C., a Minor | ) | Appeal from the Circuit Court of Cook County. |
| (The People of the State of Illinois, Petitioner-Appellee, | ) ) ) | No. 19 JA 514 |
| v. | ) ) | The Honorable Peter Vilkelis, |
| Sheila B., Respondent-Appellant). | ) ) ) | Judge Presiding. |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The juvenile court's judgment is affirmed, where (1) respondent's stipulation of facts at the adjudication hearing was not unknowingly or unintelligently made; (2) the juvenile court's failure to admonish respondent after the adjudication and dispositional hearings was harmless; and (3) the juvenile court's determination that the minor was neglected, not dependent, was not against the manifest weight of the evidence.

¶ 2    The instant appeal arises from the juvenile court's adjudication order making 16-year-old[1]

minor A.C. a ward of the court due to the neglect of her mother, respondent Sheila B.

_____

[1] The minor turned 17 the day after the adjudication hearing.

Respondent appeals, claiming that she was not properly admonished by the juvenile court and further claiming that the juvenile court erred in finding A.C. neglected. For the reasons that follow, we affirm.

¶ 3                                   BACKGROUND

¶ 4        Minor A.C. was 16 years old at the time of the adjudication hearing and was born on November 19, 2002, to respondent; A.C.'s father died on January 17, 2017, and she was living with him in Minnesota until his death, at which point she moved to Chicago to live with respondent. A.C. had a child on April 3, 2018, when she was 15 years old. On May 20, 2019,[2] the State filed a petition for adjudication of wardship, asking for A.C. to be adjudicated a ward of the court; the State also filed a motion for temporary custody on the same day. In the adjudication petition, the State claimed that A.C. was neglected under sections 2-3(1)(a) and 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(a), 2-3(1)(b) (West 2018)). The facts underlying both claims were the same. According to the petition, on May 16, 2019, respondent stated that "she wanted this minor removed from her home." The petition alleged that respondent was unable to create an adequate and safe care plan for A.C., and that respondent and A.C. "have a contentious relationship." The petition further alleged that A.C. had a history of running away from home and participating in high-risk behavior while gone, and that respondent had failed to seek services for her.

¶ 5        On the same day, based on the allegations contained in the petition for adjudication of wardship, the juvenile court found probable cause that A.C. was neglected and that immediate

_____

[2] The file stamp on the first page of the petition bears a date of May 10, 2019, but a stamp on the backside of the petition has been changed to read May 20 and the typed date on the signature line of the petition is May 20, 2019. Given that the petition alleges conduct occurring after May 10, it is likely that the petition was actually filed on May 20, not May 10.

and urgent necessity existed to support her removal from the home. The court granted temporary custody of A.C. to the Department of Children and Family Services (DCFS) guardianship administrator. The court also issued a child protection warrant for A.C., whose whereabouts were unknown, and issued a second child protection warrant on July 29, 2019. The record shows that A.C. eloped from two foster homes shortly after placement, and that DCFS was unable to locate her. Respondent claimed at the dispositional hearing that 17-year-old A.C. was staying in the home of a 24-year-old man.

¶ 6        On November 18, 2019, the parties appeared before the juvenile court for an adjudication hearing. While the court-appointed guardian *ad litem* was present, A.C. was not present during the hearing. At the beginning of the hearing, respondent's counsel discussed a stipulation of facts, which was signed by the State, respondent's counsel, and the guardian *ad litem*, and the juvenile court addressed respondent:

> "THE COURT: How are we going to be proceeding, please?
>
> RESPONDENT'S COUNSEL: Judge, I do have a signed stipulation of facts that I can read into the record at this time.
>
> [Respondent?]
>
> RESPONDENT: Yes.
>
> THE COURT: [Respondent], the case is here today for an adjudication, which is Juvenile-Court-speak for trial. Typically, what happens at a trial, the State has the burden of going forward. They call witnesses. They have the burden of proof. The witnesses take an oath to tell the truth. They sit in the witness stand. They answer questions, and after all of the witnesses have testified and all the evidence has been

admitted, the judge makes a decision based on what you hear from the witness stand and what the evidence shows.

Sometimes folks agree to what's called a stipulation. That's where they get together, and they discuss who the witnesses would be and what the witnesses would say.

And if people can come to an agreement as to who the witnesses would be and what the witnesses would say, it gets put in written form. That's called the Stipulation of Facts. That's going to get read into the record. And I'll make a decision based on what's contained in the stipulation and whatever the exhibit reflects.

The bottom line is when we proceed in this fashion, that means there is not going to be any actual live testimony in the courtroom for the purpose of the trial of this case.

So have you talked about this with your lawyer?

RESPONDENT: Yes, your Honor. I did.

THE COURT: Did you review the stipulation with him?

RESPONDENT: Yes, your Honor. I did.

THE COURT: Okay. And you agree to proceed in that fashion?

RESPONDENT: Yes, your Honor. I do.

THE COURT: Okay. Thank you, ma'am.

Let the record reflect that [respondent] has the benefit of counsel, that she understands the contents and consequences of the stipulation. Therefore, the stipulation will be received into evidence."

¶ 7    The parties then proceeded by way of a stipulation of facts, in which they stipulated that respondent was A.C.'s mother, and that A.C. had a child born April 3, 2018, who was currently

in the care of DCFS. The parties also stipulated as to the testimony of several witnesses. First, a DCFS investigator would testify that on May 2, 2019, she was assigned to investigate a report that A.C. had run away with her child; at the time the report came in, there was an open intact case with Catholic Charities[3] concerning A.C.'s son. On May 16, 2019, the investigator spoke with respondent during an in-person conversation in which respondent stated that A.C. "should be placed in foster care with her son." The investigator was unable to find anyone else to care for A.C. and took protective custody of her due to respondent's unwillingness to further care for A.C. and her inability to create a care plan for A.C.

¶ 8   Next, an intact caseworker with Catholic Charities would testify that she worked with respondent and A.C. and that an intact case was open after A.C.'s child was burned.[4] The caseworker would testify that on May 3, 2019, she had an in-person conversation with respondent in which respondent "stated that she and her daughter do not get along and that her daughter needs to find somewhere else to live."

¶ 9   Finally, a school clerk at A.C.'s school would testify that as of March 22, 2019, A.C. was enrolled at the school but that she had not been present at school since October 31, 2018.[5] The clerk would testify that she attempted to contact respondent concerning A.C.'s absences, but respondent "states that she cannot make [A.C.] come to school." The parties also stipulated to the admission of A.C.'s school records.

---

[3] Catholic Charities provides home-based services to families referred by DCFS due to allegations of abuse or neglect through its intact family services program. See Catholic Charities, *Children/Youth/Families Abuse or Neglect*, https://www.catholiccharities.net/GetHelp/OurServices/ChildrenYouthFamiliesAbuseorNeglect.aspx (last visited May 22, 2020).

[4] A service plan admitted as an exhibit in the dispositional hearing indicates that the burn allegedly occurred when the child rolled off a bed and into a lamp, where he was burned by the lightbulb; the child sustained a second-degree burn.

[5] The stipulation states "October 31, 2019," not 2018. However, the school records admitted as an exhibit show that the last day A.C. was present in school was October 31, 2018, making it likely that the 2019 date was a typo.

¶ 10        In argument, A.C.'s attorney argued that if the trial court was to make a finding, it should enter a finding of dependency, not neglect. Counsel argued that respondent "did whatever she could to help" A.C. with her child, and attempted to have A.C. attend school. Counsel also argued that Catholic Charities had also had no success in helping A.C. In response, the State argued that a finding of neglect was appropriate because "this was a lockout situation," in which respondent informed both the Catholic Charities worker and the DCFS investigator that she did not want to care for A.C. any longer, and in which she failed to make any alternative care plan for A.C., leaving A.C. with no place to reside.

¶ 11        After hearing the parties' arguments, the juvenile court found that "[c]ounsel for mother argues for a Dependency C finding and essentially a no-fault dependency, and while that's clearly a possibility here, I don't know that the evidence before me would justify me making a finding of that. I think the evidence is more supportive of the allegation of neglect, care necessary. I'm not going to make a finding of neglect, injurious environment, but I am going to make the finding of neglect, care necessary, as the State has argued, and the court agrees it's essentially a lockout situation." Accordingly, the juvenile court entered an adjudication order finding A.C. neglected due to lack of care under section 2-3(1)(a) of the Juvenile Court Act because "mother locked minor out and failed to make [an] alternative care plan for the minor" and further finding that the neglect was due to respondent's conduct.

¶ 12        On January 8, 2020, the parties came before the juvenile court for a dispositional hearing, at which a DCFS family worker assigned to A.C.'s case recommended that A.C. be made a ward of the court, with a permanency goal of independence. After the family worker's testimony, respondent asked to address the court, saying that she and her attorney were "not seeing eye to eye." Respondent then told the court about her attempts to look after A.C.'s

welfare, all of which had been futile. The court noted that the adjudication hearing had proceeded by way of stipulation:

"THE COURT: All right. When we went to trial in this case, the parties agreed to a stipulation of facts, and—

RESPONDENT: And the only reason why I agreed with that, your Honor, to go ahead with that is because that's what my public defender advised me. If you don't want to go on the stand and tell this and have DCFS say this and say that, then we can put this motion in to where we can just, you know, all the facts are written down in the paperwork and that's that. And I was wrong to agree with that. I should have [done] what I felt in my heart I should have [done], which was get on the stand and tell you all the truth. This child is disobedient, disrespectful. She does not listen to anything."

The juvenile court stopped respondent when she again began reciting her futile efforts to look after A.C., then entered a disposition order finding respondent unable for some reason other than financial circumstances alone to care for, protect, train, or discipline A.C. and finding that it was in A.C.'s best interest to remove her from the custody of respondent. The juvenile court placed A.C. in the custody of the DCFS guardianship administrator, and entered a permanency order with a permanency goal of substitute care pending independence. This appeal follows.

¶ 13                                    ANALYSIS

¶ 14        On appeal, respondent challenges only the finding that A.C. was neglected; while her notice of appeal lists both the adjudication and disposition orders, respondent makes no argument on appeal concerning the propriety of the disposition order, so we consider only the adjudication order. See *In re Diamond M.*, 2011 IL App (1st) 111184, ¶ 18; *In re L.H.*, 384 Ill. App. 3d 836, 843 (2008). "A proceeding for adjudication of wardship 'represents a significant

intrusion into the sanctity of the family which should not be undertaken lightly.' " *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004) (quoting *In re Harpman*, 134 Ill. App. 3d 393, 396-97 (1985)). It is the State's burden to prove allegations of neglect by a preponderance of the evidence. *In re A.P.*, 2012 IL 113875, ¶ 17. "In other words, the State must establish that the allegations of neglect are more probably true than not." *In re A.P.*, 2012 IL 113875, ¶ 17. A reviewing court will reverse the juvenile court's determination "only if the factual findings are against the manifest weight of the evidence or if the court abused its discretion by selecting an inappropriate dispositional order." *In re Kamesha J.*, 364 Ill. App. 3d 785, 795 (2006); see also *In re Malik B.-N.*, 2012 IL App (1st) 121706, ¶ 56; *In re J.C.*, 396 Ill. App. 3d 1050, 1060 (2009); *In re Gabriel E.*, 372 Ill. App. 3d 817, 828 (2007). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004) (citing *In re Edward T.*, 343 Ill. App. 3d 778, 794 (2003)). "Ultimately, there is a 'strong and compelling presumption in favor of the result reached by the trial court' in child custody cases." *In re William H.*, 407 Ill. App. 3d 858, 866 (2011) (quoting *Connor v. Velinda C.*, 356 Ill. App. 3d 315, 323 (2005)).

¶ 15   In the case at bar, respondent first claims that she was not properly admonished before agreeing to proceed under a stipulation of facts at the adjudication hearing, so her agreement was not made intelligently. Admissions under the Juvenile Court Act must be voluntarily and intelligently made. *In re M.H.*, 196 Ill. 2d 356, 366 (2001). "This knowing and voluntary requirement protects a parent from admitting to neglect or abuse when their conduct does not fall within the State's allegations." *In re M.H.*, 196 Ill. 2d at 366. "Thus, for the admission of a parent to be valid in the adjudicatory phase of a neglect proceeding, it must be apparent from the record that the parent making the admission understood the consequences of his

admission—that a finding of neglect gives the court jurisdiction of the minor who then becomes subject to the dispositional powers of the court." *In re Johnson*, 102 Ill. App. 3d 1005, 1012-13 (1981).

¶ 16     As an initial matter, respondent has forfeited any challenge concerning her stipulation, as she did not raise the issue before the juvenile court. "Where a party fails to make an appropriate objection in the court below, he or she has failed to preserve the question for review and the issue is waived." *In re April C.*, 326 Ill. App. 3d 225, 242 (2001) (citing *In re Lakita B.*, 297 Ill. App. 3d 985, 991 (1998)). While respondent claims in her brief on appeal that she "told the court she wanted to withdraw her agreement to the stipulation," that is not borne out by the record. At the dispositional hearing, respondent informed the juvenile court that she regretted agreeing to the stipulation, but never filed a motion to withdraw her stipulation or otherwise informed the court that she wished to "withdraw her agreement to the stipulation," as she claims. Thus, the issue has not been properly preserved for review on appeal. In her reply brief, respondent asks us to review the issue under the plain-error doctrine, which has been used in child custody proceedings. See, *e.g.*, *In re Chance H.*, 2019 IL App (1st) 189953, ¶ 47. Under the plain-error doctrine, "[a]n appellate court may address a forfeited error affecting substantial rights *** if the evidence is closely balanced or the error results in the denial of a substantial right and thus a fair hearing." *In re Chance H.*, 2019 IL App (1st) 189953, ¶ 47 (citing *In re S.H.*, 2014 IL App (3d) 140500, ¶ 22). However, the first step in a plain-error analysis is determining whether an error occurred at all. *In re Chance H.*, 2019 IL App (1st) 189953, ¶ 48. In the case at bar, we do not find respondent's arguments persuasive and can find no error in the juvenile court's admonitions.

¶ 17    In a proceeding under the Juvenile Court Act, a parent has the right to be present, to be heard, to present evidence, to cross-examine witnesses, to examine pertinent court files and records, and to be represented by counsel. 705 ILCS 405/1-5(1) (West 2018); see also *In re Andrea F.*, 208 Ill. 2d 148, 160 (2003). In the case at bar, respondent argues that the juvenile court did not advise her of these rights prior to accepting the stipulation of facts, so respondent was unaware that she could cross-examine the State's witnesses or present witnesses on her own behalf. We do not find this argument persuasive.

¶ 18    The record shows that the juvenile court advised respondent that the adjudication hearing was "Juvenile-Court-speak for trial," at which the State bore the burden of proof and would present witnesses, who would be subject to questioning. The court also advised respondent that stipulations were often entered after the parties "discuss[ed] who the witnesses would be and what the witnesses would say." The court told respondent that "if people can come to an agreement as to who the witnesses would be and what the witnesses would say, it gets put in written form" called a stipulation. The court's comments thus advised respondent not only that the State would present witnesses, but also that the parties could come to an agreement as to what witnesses would testify at the hearing and to the substance of their testimony that would be elicited after questioning. These comments make clear that respondent would be permitted to have a role in determining what witnesses would testify, as well as in questioning them.

¶ 19    We also find unpersuasive respondent's contention that she was not advised of the nature of the proceedings or the consequences of her stipulation. The juvenile court made clear that it would be making its decision based on the facts contained in the stipulation, as well as any exhibits. Thus, respondent was expressly advised that her stipulation would be used to form the basis of the court's decision. As noted, respondent was also advised that the adjudication

hearing was analogous to a "trial" on the State's petition. The petition itself was entitled a "Petition for Adjudication of Wardship" and stated that the State sought to have A.C. adjudicated a ward of the court. A "trial" on the petition would thus necessarily involve a finding on that issue. See *In re April C.*, 326 Ill. App. 3d at 242 (in finding that the respondent entered into a stipulation knowingly, noting that the petition stated in the title and body that the State was seeking to have the respondent's children adjudicated wards of the court). Finally, we note that respondent was represented by counsel at the time of the stipulation and informed the juvenile court that she had reviewed the stipulation with him. Respondent does not contend on appeal that her counsel was ineffective or failed to explain the nature and ramifications of the proceedings to her. See *In re April C.*, 326 Ill. App. 3d at 242 (finding significant that the respondent was represented by counsel and "[h]er appeal contains no allegations that her counsel was ineffective or failed to explain the nature and ramifications of the proceedings to her"). She only wanted to tell the court how difficult it was to have A.C. in her household through no fault of her own. Indeed, respondent's comments at the dispositional hearing suggest that she and her counsel strategically chose to agree to the stipulation so that respondent would not be required to take the stand "and have DCFS say this and say that" in response to her version of events. Moreover, respondent did not stipulate to the State's allegation of neglect, but only to the substance of the testimony of several witnesses. Counsel used the testimony of these witnesses to argue that dependency, not neglect, was the appropriate finding. The fact that this argument was unsuccessful does not render respondent's stipulation unknowing or unintelligently made. Thus, even if we did not consider forfeiture, we do not find respondent's arguments as to her stipulation to be persuasive.

11

¶ 20    Respondent also argues that the juvenile court failed to admonish her after the adjudication and dispositional hearings, which she claims requires reversal. The juvenile court is required to admonish a parent that she must cooperate with DCFS, comply with the terms of the service plan, and correct the conditions that require the minor to be in DCFS care at several points during proceedings under the Juvenile Court Act, including after the adjudication and dispositional hearings. See 705 ILCS 405/1-5(3); 2-21(1); 2-22(6)(a) (West 2018); *In re Andrea F.*, 208 Ill. 2d at 161 (noting these admonitions are required at the first appearance, following the adjudication hearing, and following the dispositional hearing). In the case at bar, the reports of proceedings from the adjudication and dispositional hearings show that the juvenile court failed to give respondent these admonishments.

¶ 21    Again, as with respondent's challenge to her stipulation, respondent has forfeited any challenge to the juvenile court's admonishments by failing to raise the issue before the juvenile court. See *In re April C.*, 326 Ill. App. 3d at 242 (citing *In re Lakita B.*, 297 Ill. App. 3d at 991). Additionally, even if properly preserved (or reviewed for possible plain error), we would not find respondent's arguments for reversal persuasive. Respondent claims that a remedy for a court's failure to issue admonishments is reversal with instructions to administer the proper admonishments. However, the case that respondent cites in support of that contention does not stand for that proposition but merely required the juvenile court to properly admonish the parties when the case was remanded back to the juvenile court for a different reason. See *In re G.V.*, 2018 IL App (3d) 180272, ¶ 38.

¶ 22    Instead, a juvenile court's failure to admonish a respondent is subject to a harmless-error analysis. *In re Kenneth F.*, 332 Ill. App. 3d 674, 679 (2002); see also *In re Moore*, 87 Ill. App. 3d 1117, 1120 (1980). "An error may be harmless if it did not contribute to the outcome of an

action, if overwhelming evidence supports the order of the trial court, or if the error pertained to evidence that was merely cumulative or corroborative of other evidence." *In re Kenneth F.*, 332 Ill. App. 3d at 680 (citing *People v. Fletcher*, 328 Ill. App. 3d 1062, 1071-72 (2002)).

¶ 23    In the case at bar, respondent does not identify any way in which she has been prejudiced by the juvenile court's failure to admonish her at the conclusion of the adjudication and dispositional hearings, other than stating that the permanency goal could conceivably change from independence to termination if respondent failed to engage in the recommended services. However, respondent's argument fails to recognize that she had already been admonished once—at the temporary custody hearing, at which the record shows she was present. The same admonishments required after the adjudication and dispositional hearings are also required after the minor is placed in the temporary custody of DCFS. See 705 ILCS 405/2-10(2) (West 2018) (when a minor is placed in the temporary custody of DCFS, "the court shall admonish the parents *** that the parents must cooperate with the Department of Children and Family Services, comply with the terms of the service plans, and correct the conditions which require the child to be in care, or risk termination of their parental rights"). While the report of proceedings from the temporary custody hearing is not contained in the record on appeal, in its absence, we must presume that the juvenile court administered the appropriate admonishments during that hearing. See *In re Kenneth F.*, 332 Ill. App. 3d at 678 (given the absence of a transcript or bystander's report, "we must presume that the trial court acted properly and that respondent received the proper admonishments"). Thus, respondent was advised of the importance of DCFS cooperation at least once during the proceedings.

¶ 24    Additionally, respondent does not claim that she would have complied with the DCFS service plan had she been properly admonished. The service plan submitted as an exhibit at the

dispositional hearing shows that respondent had not participated in individual therapy, and that she could not participate in any services involving A.C. while A.C.'s whereabouts were unknown. Consequently, we cannot find that any additional admonishments would have had an effect on respondent's conduct with respect to engaging in services. Accordingly, even if the issue had been properly preserved for our review, we would not be able to find reversible error in the juvenile court's failure to admonish respondent at the end of the adjudication and dispositional hearings. In addition, if we made a plain-error analysis here, we would be required to find that the failure to give the admonishments under the facts of this case would not rise to the level of plain error.

¶ 25    Finally, respondent argues that the juvenile court erred in entering a finding of neglect rather than dependency at the adjudication hearing. At the adjudication hearing, the juvenile court determines if a minor is abused, neglected, or dependent. 705 ILCS 405/2-21 (West 2018). A neglected minor, for purposes of the instant case, includes a minor:

> "who is not receiving the proper or necessary support, education as required by law, or medical or other remedial care recognized under State law as necessary for a minor's well-being, or other care necessary for his or her well-being, including adequate food, clothing and shelter." 705 ILCS 405/2-3(1)(a) (West 2018).

By contrast, a dependent minor includes a minor:

> "who is without proper medical or other remedial care recognized under State law or other care necessary for his or her well being through no fault, neglect or lack of concern by his parents, guardian or custodian." 705 ILCS 405/2-4(1)(c) (West 2018).

¶ 26    In the case at bar, respondent claims that the proper finding would have been dependency, not neglect, because A.C.'s condition was not the fault of respondent. As noted, it is the State's

burden to prove allegations of neglect or abuse by a preponderance of the evidence. *In re A.P.*, 2012 IL 113875, ¶ 17. A reviewing court will reverse the juvenile court's determination only if it is against the manifest weight of the evidence. *In re Arthur H.*, 212 Ill. 2d at 464. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *In re Arthur H.*, 212 Ill. 2d at 464 (citing *In re Edward T.*, 343 Ill. App. 3d at 794).

¶ 27    "Generally, 'neglect' is defined as the failure to exercise the care that circumstances justly demand and includes both willful and unintentional disregard of parental duties." *In re Christopher S.*, 364 Ill. App. 3d 76, 88 (2006) (citing *In re Christina M.*, 333 Ill. App. 3d 1030, 1034 (2002)). The term is not a fixed and measured meaning, and takes its content from the specific circumstances of each case. *In re Christopher S.*, 364 Ill. App. 3d at 88. "Accordingly, cases involving an adjudication of neglect and wardship are *sui generis*, and each case must be decided on the basis of its own unique circumstances." *In re Christopher S.*, 364 Ill. App. 3d at 88 (citing *In re Christina M.*, 333 Ill. App. 3d at 1034).

¶ 28    In the case at bar, we cannot find that it was against the manifest weight of the evidence for the juvenile court to find that A.C. was neglected and not dependent. Respondent argues that A.C.'s "condition" of missing school and engaging in unsafe behavior was not due to any fault of respondent. However, the basis of the juvenile court's order was respondent's actions in response to A.C.'s conduct. Specifically, according to the stipulation of facts,[6] respondent informed both the DCFS investigator and the Catholic Charities caseworker that A.C. could no longer live with her. Despite this, respondent failed to make an alternative care plan for A.C. but instead (1) told the DCFS investigator that A.C. "should be in foster care with her

---

[6] We note that respondent makes arguments based on facts set forth in the service plan admitted as an exhibit in the dispositional hearing, including facts of the case involving A.C.'s son. However, this plan was not an exhibit at the adjudication hearing, which consisted only of the stipulation of facts and a copy of A.C.'s school records.

son" and (2) told the Catholic Charities caseworker that A.C. "needs to find somewhere else to live." We recognize respondent's argument, albeit in a different area of her brief, that A.C. was not permitted to live with respondent as a result of her own DCFS involvement with her child.[7] This does not mean, though, that respondent was without any responsibility in ensuring A.C.'s safety. Even if A.C. could not live with respondent, respondent had the ability—and the responsibility—to attempt to find an alternative living arrangement for her, which the court found she did not do. Compare *In re Rayshawn H.*, 2014 IL App (1st) 132178, ¶ 29 (in affirming finding of neglect, noting that the respondent "made little to no effort in finding alternative living arrangements" for the minor); *In re Diamond M.*, 2011 IL App (1st) 111184, ¶ 27 (same); and *In re L.H.*, 384 Ill. App. 3d at 842 (same), with *In re Christopher S.*, 364 Ill. App. 3d at 87 (in affirming finding of dependency, noting that the respondents tried to provide alternative care for the minor, including contacting 43 different agencies and individuals). Accordingly, we cannot find that it was against the manifest weight of the evidence for the juvenile court to find that A.C. was neglected, not dependent.

¶ 29                                        CONCLUSION

¶ 30        For the reasons set forth above, we affirm the juvenile court's judgment. First, respondent's stipulation at the adjudication hearing was not unknowingly or unintelligently made. Second, while the juvenile court failed to admonish respondent after the adjudication and dispositional hearings, such an error was harmless. Finally, the juvenile court's determination that A.C. was neglected, not dependent, was not against the manifest weight of the evidence.

¶ 31        Affirmed.

---

[7] The records submitted in connection with the dispositional hearing appear to at least partially bear this out, containing references to A.C. violating a safety plan in April 2019 by returning to respondent's home.