FOURTH DIVISION

SEPTEMBER 26, 2002

1-01-1035

In re Christina M., a Minor ) Appeal from the 

(THE PEOPLE OF THE STATE OF ILLINOIS, ) Circuit Court of 

    ) Cook County.

Petitioner-Appellee, )

)

v. ) 

)

Debra T.-M., ) Honorable

) James M. Obbish,

Respondent-Appellant). ) Judge Presiding.

JUSTICE HARTMAN delivered the opinion of the court:

Respondent Debra T.-M. appeals from an order of the circuit court finding that respondent's minor daughter, Christina M., was "neglected" based on a lack of necessary care, as defined in section 2-3(1)(a) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(a) (West 2000)).

On August 1, 2000, the State filed a petition for adjudication of wardship regarding Christina (born January 30, 1984), alleging that she was neglected due to a lack of necessary care by respondent.
(footnote: 1)  Specifically, the petition stated that on July 20, 2000, respondent locked Christina and Christina's infant daughter out of her home and to date, refuses to allow Christina to return home.  The petition stated further that respondent has five other children who are or were in the custody of the Department of Children and Family Services (DCFS) based on findings of abuse and/or neglect, and that Christina was previously a DCFS ward based on a finding of neglect.  Following a hearing, the circuit court awarded temporary custody of Christina to the DCFS guardianship administrator.

At the adjudicatory hearing held on January 3, 2001, Steven Mittons, a DCFS investigator, testified that on July 20, 2000, he was called to investigate an allegation that Christina had left her child unattended at respondent's residence.  He interviewed respondent, who stated that she received information that Christina had left her baby unattended at her home.  Respondent called the police, and Christina was taken into custody, then released.  Respondent stated that she told Christina that neither she nor her daughter could continue to reside at the home.  Christina confirmed in a separate interview that she had been told to leave respondent's residence. 

Mittons met with respondent again at her home and advised her that legally she could not lock her minor child, Christina, out of her residence.  Respondent agreed to allow Christina to return home.  Mittons brought Christina back and had a discussion with both Christina and respondent during which he and respondent tried to facilitate a care plan that would allow Christina and her child to remain in the home.  The conversation "escalated into an argument" between respondent and Christina when Christina said that respondent had never been a mother to her.  Respondent then "rose from her seat and stepped forward aggressively."  Mittons stepped in between the two, and respondent backed away.  He then removed Christina and her child from respondent's residence for safety reasons.

On July 27, 2000, Mittons interviewed respondent regarding an allegation that she had locked Christina out of the home.  He said he and respondent tried to facilitate some type of care plan, and he informed her of the probability of the case being brought into court if she did not take Christina back into her home.  He asked respondent if Christina could stay with another relative, but respondent was unable to recommend any family member.  Respondent stated that she was not willing to allow Christina back into the home because she felt uncomfortable and believed it was best for all concerned.

On cross-examination, Mittons testified that Christina admitted leaving her baby alone at respondent's house, and she thought there would be no harm as long as the baby was asleep.  Respondent told him that she previously had warned Christina numerous times about leaving the baby home alone.  She had also forbade Christina from selling or using drugs or drinking alcohol in the apartment.  Respondent previously had caught Christina in the apartment using drugs with fellow gang members.  During Mitton's discussion with both respondent and Christina, respondent stated that she would allow Christina to return home if she followed her rules and agreed not to bring gang members to the apartment.  Christina made a statement indicating that she believed her mother's rules were overbearing.  After Christina expressed that she would not follow the rules, respondent said she could not remain in respondent's home.  Respondent also stated that for safety reasons she was fearful of Christina being present around respondent's other daughter, Shelly.

The State then introduced certified copies of adjudicatory orders finding that Christina and three of her siblings had been abused or neglected.  In 1995, Christina was found neglected because of an injurious environment.  Also in 1995, Shelly was found neglected because of lack of necessary care and injurious environment.  In 1996, another sibling was found neglected because of an injurious environment.  A fourth sibling was found abused based on excessive corporal punishment.

During closing arguments, the State requested a finding of neglect based on an injurious environment.  Respondent asked that the circuit court either dismiss the petition or enter a finding of dependency.   In making its finding of neglect based on a lack of necessary care, the court noted the relevance of the other findings of neglect as to Christina and her siblings.  The court found that respondent's frustration with Christina's behavior, while reasonable, did not justify her locking Christina out of the house or refusing to cooperate in arranging a care plan for Christina.

At the dispositional hearing, Rashida Fearn, a caseworker with the Chicago Child Care Society, testified that Christina was currently placed in a nonrelative foster home with her 11-month-old daughter.  She was attending school, and her grades had improved.  Referrals had been made for her to attend parenting classes and counseling.  Fearn set up a visit between respondent and Christina and referred respondent to parenting classes.  Respondent refused the parenting classes, saying she had already taken those and did not need them again.  Christina stated she was happy in her new placement and did not want further visits with respondent because respondent did not want Christina back in her home.  Fearn spoke with respondent before the hearing, and respondent stated that it would not be reasonable to allow Christina back in her home because Christina was unwilling to follow the rules.

The circuit court adjudicated Christina a ward of the court and found respondent unable to care for, protect, train or discipline Christina for other than financial reasons alone. Respondent contends that the circuit court erred in finding Christina neglected based on a lack of necessary care.  She argues that Christina should have been found a dependent minor, or, in the alternative, a minor requiring authoritative intervention.

I

The circuit court's determination that a child is neglected is entitled to great deference on appeal and will not be overturned unless the findings of fact are against the manifest weight of the evidence.  
In re M.Z.
, 294 Ill. App. 3d 581, 691 N.E.2d 35 (1998).  The State bears the burden of proving neglect by a preponderance of the evidence.  
In re M.D.H.
, 297 Ill. App. 3d 181, 697 N.E.2d 417 (1998) (
M.D.H.
).

By statute, a "neglected minor" includes one "who is not receiving the proper or necessary support, education as required by law, or medical or other remedial care recognized under State law as necessary for a minor's well-being, or other care necessary for his or her well-being, including adequate food, clothing and shelter."  705 ILCS 405/2-3(1)(a) (West 2000).  In general, "neglect" is defined as the failure to exercise the care that circumstances justly demand and encompasses both willful and unintentional disregard of parental duties.  
In re Edricka C.
, 276 Ill. App. 3d 18, 657 N.E.2d 78 (1995) (
Edricka C.
).  The term is not one of "fixed and measured meaning" and takes its content from the specific circumstances of each case.  
In re J.M.
, 245 Ill. App. 3d 909, 613 N.E.2d 1346 (1993).  Cases involving an adjudication of neglect and wardship are 
sui
 
generis
, and each case must ultimately be decided on the basis of its own particular facts.  
Edricka C.
, 276 Ill. App. 3d at 25.

Respondent argues that she should not "bear the onus of being legally adjudged a neglectful parent."  First, respondent misconstrues the purpose of an adjudicatory finding of neglect.  The purpose of an adjudicatory hearing is to determine whether the child has been neglected, not to determine the status of the parent.  See 705 ILCS 405/1-3(1) (West 2000).

Second, the circuit court's finding of neglect justifiably was based upon respondent's conduct in this case, as well as her prior history with DCFS, and was not against the manifest weight of the evidence.  The evidence at the adjudicatory hearing established that respondent locked Christina and her infant daughter out of her home, refused to cooperate with DCFS staff to facilitate a care plan for Christina, and refused to attend parenting classes.  A DCFS investigator also testified regarding an incident where respondent moved "aggressively" toward Christina, requiring the investigator to step between them.  Further, the record reveals that prior to this case, Christina and three other children of respondent had at various times been found neglected or abused and placed in DCFS custody.  Proof of the abuse, neglect or dependency of one minor is admissible evidence on the issue of the abuse, neglect or dependency of any other minor for whom the respondent is responsible.  705 ILCS 405/2-18(3) (West 2000); 
M.D.H.
, 297 Ill. App. 3d at 188-89.  While respondent was justified in insisting that Christina follow reasonable rules while living with her, her response to Christina's refusal to abide by the rules was inappropriate.  A finding of neglect is appropriate where a minor is not receiving care necessary for his or her well-being, including shelter.  The  evidence was sufficient to prove that respondent neglected Christina by failing to provide necessary care, and the circuit court's finding was not against the manifest weight of the evidence.

II

Respondent's argument that the circuit court should have found Christina a dependent minor or a minor requiring authoritative intervention is without merit.  A "dependent minor" includes a minor who is (1) without a parent, guardian or custodian, (2) without proper care due to a physical or mental disability of his parent, guardian or custodian, (3) without proper care through no fault, neglect or lack of concern by his parents, guardian or custodian, or, (4) whose parent, guardian or custodian with good cause wishes to be relieved of all parental rights and responsibilities.  705 ILCS 405/2-4(1) (West 2000).  Respondent acted affirmatively to refuse Christina shelter and lock her out of her home, against the advice of the DCFS investigator, and she refused to participate in facilitating a care plan for Christina.  Consequently, the evidence supports classifying Christina as neglected and not dependent because respondent was responsible for placing Christina in her current position.  

A "minor requiring authoritative intervention" is:

"any minor under 18 years of age (1) who is (a) absent from home without consent of parent, guardian or custodian, or (b) beyond the control of his or her parent, guardian or custodian, in circumstances which constitute a substantial or immediate danger to the minor's physical safety; and (2) who, after being taken into limited custody *** and offered interim crisis intervention services, where available, refuses to return home after the minor and his or her parent, guardian or custodian cannot agree to an arrangement for an alternative voluntary residential placement or to the continuation of such placement."  705 ILCS 405/3-3 (West 2000) (section 405/3-3).   

The evidence does not support a classification of Christina as a minor requiring authoritative intervention where she was absent from home with the consent of respondent, and the requirements of subsection (2) of section 405/3-3 have not been met. 

The circuit court's determination that Christina was neglected based on a lack of necessary care was not against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

THEIS, P.J., and KARNEZIS, J., concur.

FOOTNOTES
1:
The minor's father was defaulted by publication on January 3, 2001, and is not a party to this appeal.