NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230577-U

NOS. 4-23-0577, 4-23-0686 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 24, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Rock Island County |
| Petitioner-Appellee, | ) | No. 23JA33 |
| v. | ) | |
| Scott M. and Rebecca M., | ) | Honorable |
| Respondents-Appellants). | ) | Theodore G. Kutsunis, |
| | ) | Judge Presiding. |

---

PRESIDING JUSTICE TURNER delivered the judgment of the court.
Justices Cavanagh and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Numerous errors occurred in the neglect proceedings warranting new proceedings.

¶ 2    In March 2023, the State filed a petition for adjudication of wardship as to J.M. (born in July 2006), the minor child of respondents, Scott M. and Rebecca M., asserting the minor child was neglected.  The Rock Island County circuit court found J.M. was neglected after J.M. stipulated to the wardship petition.  At the dispositional hearing, the court (1) found respondents unwilling or unable to care for J.M., (2) made J.M. a ward of the court, and (3) placed J.M.'s custody and guardianship with the Department of Children and Family Services (DCFS).

¶ 3    Respondents appeal, contending (1) the circuit court erred in finding J.M. neglected, (2) the manner in which the court conducted the adjudicatory and dispositional

hearings violated respondents' due process rights, and (3) the wardship petition did not meet the requirements of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2022)) in violation of respondents' due process rights.  We reverse and remand with directions.

¶ 4                                    I. BACKGROUND

¶ 5        The State's March 2023 wardship petition alleged J.M. was neglected because he was not receiving the proper or necessary support required by law or other remedial care recognized under state law as necessary for his well-being.  It further asserted J.M. had been abandoned by respondents because they refused to permit J.M. to return home and had not made alternative arrangements for his care.  The petition alleged the following facts.  On January 3, 2023, J.M. presented at UnityPoint Health-Trinity West Campus, where an on-call psychiatrist conducted a crisis evaluation of and consultation with J.M. and determined J.M. would be discharged on January 4, 2023.  On January 4, 2023, respondent mother filed for and obtained an emergency order of protection against J.M. in Rock Island County case No. 23-OP-12.  The order prohibited J.M. from having contact with respondents, his siblings, and his home.  Respondent mother had alleged an ongoing history of combative and dangerous behavior, physical aggression, verbal and physical threats, assault towards family members, destruction of property, and thefts in the family home by J.M.  She also noted J.M. had a history of residential placements in behavioral health facilities and other hospitalizations.  That same day, DCFS received a report alleging a lockout to J.M. by respondents.  DCFS offered a specialized family support program and adoption preservation services to respondents, but they declined to participate in the services due to the active emergency order of protection.  DCFS determined the January 4, 2023, report was "unfounded" because respondents obtained the emergency order of

protection. As of the date of the petition, respondents had not arranged for an alternative placement or care plan for J.M., and J.M. "physically remains at Unity Point [*sic*] as a 'boarder.' "

¶ 6 On April 28, 2023, the circuit court held a pretrial conference on both the wardship and order of protection cases. At the conference, the assistant state's attorney stated J.M. would be stipulating to the wardship petition. J.M. appeared at the conference via Zoom. Without seeking input from the other attorneys, the court admonished J.M. J.M., *inter alia*, indicated he understood, by stipulating, he was agreeing the State would be able to prove the allegations in the petition by a preponderance of the evidence. After the admonishments, J.M. indicated he still wished to stipulate. The court confirmed with the State the allegations in the petition served as the factual basis. It then concluded the stipulation was knowing and voluntary and a factual basis to support the allegations existed. The wardship matter was continued to June 1, 2023, and the emergency order of protection was extended.

¶ 7 On June 1, 2023, the State asked for a brief continuance because the integrated assessment had not been completed. The court noted on the record J.M. had stipulated to the facts in the petition at the April 28, 2023, hearing and it had assumed personal jurisdiction over J.M. The court set the next hearing for June 9, 2023, and extended the order of protection.

¶ 8 On June 9, 2023, the circuit court held the dispositional hearing. The only evidence presented at the hearing was the dispositional report. The report explained the reason for DCFS's involvement was J.M. began sneaking out, running away, displaying physical and verbal aggression, showing defiance, and destroying the home. Respondents would report J.M. to the police when he ran away, and the police would bring him home. On January 3, 2023, J.M. physically assaulted respondent father, knocking him down, giving him a concussion, and

causing a sprain. The police took J.M. to the hospital, and he was discharged on January 4, 2023. Respondent mother refused to pick J.M. up from the hospital, noting the police had instructed her not to have contact with J.M. due to the assault on respondent father. J.M. had remained in the hospital and no longer wanted to return home. The report recommended DCFS be given guardianship of J.M., the goal for J.M. be independence, and J.M. and respondents cooperate with DCFS and the services recommended in the service plan. All of the parties agreed with the report's recommendations.

¶ 9        After hearing from all of the attorneys, the circuit court then stated it was going to adjudicate J.M. dependent and find it was in J.M.'s best interest to be made a ward of the court. The court then found respondents were unable to care for J.M. and appointed DCFS as J.M.'s guardian. Lastly, the court found the goal was independence. The State questioned the dependent finding, and the court again noted it was finding J.M. dependent. The State then emphasized the allegation in the petition was neglect. At that point, the court stated it would amend its order to reflect a neglect finding. Respondents' counsel asserted respondents believed it was a "no-fault" finding with a goal of independence. A discussion ensued regarding whether J.M. should be adjudicated neglected or dependent. Respondents' counsel noted respondent mother's employment with DCFS would be impacted by a neglect finding. Counsel noted respondent mother had not been able to start her job because of this case. Additionally, respondents explained J.M. had been in a program for youth with mental health problems, and a neglect finding would bar him from any future involvement in the program. Respondents also raised the matter they were not able to challenge the allegations in the petition due to J.M.'s stipulation. The court ultimately adjudicated J.M. neglected.

¶ 10        That same day, the circuit court filed both the adjudicatory and dispositional

orders. The adjudicatory order incorrectly listed the hearing date of June 1, 2023. The order found J.M. neglected and noted J.M. stipulated to the allegations in the petition. The order found respondents were unable or unwilling to care for J.M. Guardianship and custody of J.M. was given to DCFS, and the goal was independence. The dispositional order also noted J.M. had been adjudicated neglected based on his stipulations to the allegations in the wardship petition.

¶ 11      On June 30, 2023, respondents' counsel filed a motion to reconsider raising numerous allegations. She asserted, before the entry of the adjudicatory and dispositional orders, respondents' counsel, J.M.'s counsel, and the State agreed the allegations in the wardship petition would be deemed no-fault as to respondents with an expected permanency goal of J.M.'s independence. Moreover, while J.M. stipulated to the wardship petition, respondents did not make a stipulation, and they expected the wardship petition would be deemed no-fault as to them and J.M. would be adjudicated independent. At the June 9, 2023, hearing, the circuit court initially adjudicated J.M. dependent and changed its ruling after the State's objection. Additionally, at the hearing, respondents' counsel noted a neglect finding could negatively affect respondent mother's employment, and respondent mother did later lose her employment due to the neglect adjudication. The motion asserted the neglect adjudication would also impact respondent mother's future employment because she works in social services.

¶ 12      On August 4, 2023, the circuit court held a hearing on respondents' motion to reconsider. Respondents' counsel desired to present respondent mother's testimony regarding her employment. DCFS's attorney objected, noting respondent mother's employment was irrelevant to J.M.'s stipulation to neglect. The court did not allow respondent mother to testify and denied the motion to reconsider.

¶ 13      On June 30, 2023, respondents filed *pro se* a timely notice of appeal in sufficient

compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017). See Ill. S. Ct. R. 660(b) (eff. Oct. 1, 2001) (providing the rules governing civil cases also govern appeals from final judgments in all proceedings under the Juvenile Court Act, except for delinquency cases). This court assigned the appeal as case No. 4-23-0577. On August 4, 2023, respondents' counsel filed a notice of appeal also in compliance with Rule 303, and this court assigned the appeal case No. 4-23-0686. Respondents filed a motion to consolidate the two appeals, which this court allowed on September 5, 2023. This court has jurisdiction of respondents' appeal from the adjudication and dispositional orders under Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016). See *In re Austin W.*, 214 Ill. 2d 31, 43-44, 823 N.E.2d 572, 580 (2005), *abrogated on other grounds by In re M.M.*, 2016 IL 119932, ¶ 31, 72 N.E.3d 260 (stating "dispositional orders are generally considered 'final' for the purposes of appeal").

¶ 14                                    II. ANALYSIS

¶ 15            Initially, we note this decision is filed outside the 150-day timeframe specified in Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), which states, "[e]xcept for good cause shown, the appellate court shall issue its decision within 150 days after the filing of the notice of appeal." Given the complexity of this appeal, respondents' requests for more time to file their appellant brief, and respondents' request for oral arguments, good cause does exist for the delayed filing.

¶ 16            As to the merits of the appeal, the Juvenile Court Act seeks to, *inter alia*, "secure for each minor subject hereto such care and guidance, preferably in the minor's own home, as will serve the safety and moral, emotional, mental, and physical welfare of the minor and the best interests of the community." 705 ILCS 405/1-2(1) (West 2022). It sets forth the procedures a circuit court must follow in determining whether a minor should be removed from his or her

parents' custody and made a ward of the court. *In re J.R.*, 2022 IL App (1st) 221109, ¶ 35. "The process is initiated when the State files a petition for wardship and the minor is placed in temporary custody." *J.R.*, 2022 IL App (1st) 221109, ¶ 35. Thereafter, the court holds an adjudicatory hearing, at which it "shall first consider only the question whether the minor is abused, neglected or dependent." 705 ILCS 405/2-18(1) (West 2022). If the court determines the minor is abused, neglected, or dependent, the court then conducts a dispositional hearing. 705 ILCS 405/2-21(2) (West 2022). At the dispositional hearing, the court determines "whether it is consistent with the health, safety and best interests of the minor and the public that [the minor] be made a ward of the court." 705 ILCS 405/2-21(2) (West 2022).

¶ 17     Our supreme court has articulated a long-standing rule cases should be decided on nonconstitutional grounds whenever possible and reach constitutional issues only as a last resort. *People v. Bass*, 2021 IL 125434, ¶ 30, 182 N.E.3d 714 (citing *In re E.H.*, 224 Ill. 2d 172, 178, 863 N.E.2d 231, 234 (2006)). As such, reviewing courts must avoid reaching constitutional issues unless necessary to decide a case. *Bass*, 2021 IL 125434, ¶ 30. Thus, we begin by addressing respondents' nonconstitutional argument the evidence was insufficient to support the circuit court's neglect finding.

¶ 18     During the adjudicatory hearing, the circuit court determines "whether the child is neglected, and not whether the parents are neglectful." *In re Arthur H.*, 212 Ill. 2d 441, 467, 819 N.E.2d 734, 749 (2004). The State bears the burden of proving a neglect allegation by a preponderance of the evidence, which means it must show the allegations are more probably true than not. See *In re A.P.*, 2012 IL 113875, ¶ 17, 981 N.E.2d 336. "Cases involving an adjudication of neglect and wardship are *sui generis*, and each case must ultimately be decided on the basis of its own particular facts." *In re Christina M.*, 333 Ill. App. 3d 1030, 1034, 777

N.E.2d 655, 659 (2002). In this case, the neglect adjudication was based on J.M.'s stipulation. Since the circuit court was in no better position than this court to assess credibility or weigh the evidence, we review the circuit court's neglect finding *de novo*. *In re S.G.*, 2022 IL App (1st) 210899, ¶ 23, 202 N.E.3d 396.

¶ 19 As respondents point out, the State's wardship petition fails to identify the specific statutory provision on which its neglect allegation is based. We note section 2-13(2) of the Juvenile Court Act (705 ILCS 405/2-13(2) (West 2022)) requires the petition to allege "the minor is abused, neglected, or dependent, with citations to the appropriate provisions of [the Juvenile Court] Act." Citing the specific subsection of section 2-3(1) of the Juvenile Court Act (705 ILCS 405/2-3(1) (West 2022)), which defines a neglected minor, is important because that provision has numerous subsections and the applicable one is not always clearly set forth by the facts alleged in the petition, as in this case.

¶ 20 Here, the only possible provision that could apply is section 2-3(1)(a) of the Juvenile Court Act (705 ILCS 405/2-3(1)(a) (West 2022)). That section defines neglect as follows:

> "[A]ny minor under 18 years of age or a minor 18 years of age or older for whom the court has made a finding of probable cause to believe that the minor is abused, neglected, or dependent under subsection (1) of Section 2-10 prior to the minor's 18th birthday who is not receiving the proper or necessary support, education as required by law, or medical or other remedial care recognized under State law as necessary for a minor's well-being, or other care necessary for his or her well-being, including adequate food, clothing and shelter, or who is abandoned by his or her parent or parents or other person or persons responsible for the minor's

welfare, except that a minor shall not be considered neglected for the sole reason that the minor's parent or parents or other person or persons responsible for the minor's welfare have left the minor in the care of an adult relative for any period of time, who the parent or parents or other person responsible for the minor's welfare know is both a mentally capable adult relative and physically capable adult relative, as defined by [the Juvenile Court] Act." 705 ILCS 405/2-3(1)(a) (West 2022).

¶ 21　　　Moreover, Illinois courts have found neglect occurs when a parent fails to exercise the care justly demanded by the circumstances and includes willful and unintentional disregard of the parent's duties. *In re J.B.*, 2013 IL App (3d) 120137, ¶ 13, 984 N.E.2d 1197. The term "neglect" does not have a fixed meaning. *Arthur H.*, 212 Ill. 2d at 463, 819 N.E.2d at 746. Instead, it takes its content from the specific facts and circumstances of each case. *Arthur H.*, 212 Ill. 2d at 463, 819 N.E.2d at 746. Generally, courts define "neglect" "as the failure to exercise the care that circumstances justly demand and encompasses both willful and unintentional disregard of parental duties." *Christina M.*, 333 Ill. App. 3d at 1034, 777 N.E.2d at 659.

¶ 22　　　Here, the only evidence presented was a stipulation by J.M. The record states J.M. stipulated to "the petition." Respondents assert the circuit court erred by accepting J.M.'s stipulation because (1) he was the minor and not a respondent parent, (2) the record does not reflect J.M. had knowledge of the facts to which he stipulated, and (3) the stipulation lacked a factual basis. The State asserts J.M.'s stipulation was knowing, properly accepted by the court, and had a sufficient factual basis. It does not address the fact J.M. was a minor. As respondents note, this court has recognized "[a] custodial parent's admission and stipulation, by itself, may be

sufficient to support a finding of abuse or neglect." (Emphasis omitted.) *In re R.B.*, 336 Ill. App. 3d 606, 616, 784 N.E.2d 400, 408 (2003). Respondents were unable to find case law on whether a minor may stipulate to a petition for wardship alleging neglect. The State does not identify any case law suggesting a minor may stipulate to the allegations of a neglect petition for which he or she is the subject. We note section 1-5(1) of the Juvenile Court Act (705 ILCS 405/1-5(1) (West 2022)) defines the minor's role in the proceedings differently than a parent. That section states "the *minor who is the subject of the proceeding* and *his or her parents*, guardian, legal custodian or responsible relative *who are parties respondent*" have, *inter alia*, the right to be present and heard. (Emphases added.) 705 ILCS 405/1-5(1) (West 2022). Under such language, it does not appear a minor can stipulate to a wardship petition alleging neglect. Without the minor's stipulation, no evidence of neglect was presented to the circuit court, and thus we agree with respondents the evidence was insufficient to support a neglect finding.

¶ 23    Even if a minor can stipulate to a wardship petition alleging neglect, J.M.'s stipulation along with the adjudicatory hearing had several other procedural errors. First, a custodial parent is not bound by an admission/stipulation by someone who is not a custodial parent. *In re T.C.*, 2021 IL App (2d) 200691, ¶ 22, 187 N.E.3d 752. As such, the circuit court still should have held a hearing on the neglect petition. Second, as respondents assert, the factual basis supporting J.M.'s stipulation was bootstrapped. J.M. stipulated to the facts of the State's petition and then the court used the facts of the petition as the factual basis for the stipulation. Such a procedure is improper. Moreover, the court found J.M. neglected only after the assistant state's attorney asserted J.M. stipulated to being a neglected minor and not a dependent minor. It appears the court intended to make a no-fault dependency finding under section 2-4(1)(c) of the Juvenile Court Act (705 ILCS 405/2-4(1)(c) (West 2022)). We note the circuit court is to weigh

the admission and/or stipulation along with the underlying factual basis in determining whether the minor is neglected. See *R.B.*, 336 Ill. App. 3d at 616, 784 N.E.2d at 408. The admission or stipulation does not remove the discretion of the circuit court in determining the minor's status, including whether the minor is more appropriately adjudicated dependent (705 ILCS 405/2-4(1)(c) (West 2022)) rather than neglected. See *R.B.*, 336 Ill. App. 3d at 616, 784 N.E.2d at 408. With all of the procedural errors, we find the appropriate relief is to remand the cause for new adjudicatory and dispositional hearings in compliance with the Juvenile Court Act.

¶ 24                                  III. CONCLUSION

¶ 25         For the reasons stated, we vacate the Rock Island County circuit court's adjudicatory and dispositional orders and remand the cause for further proceedings.

¶ 26         Vacated and remanded with directions.