NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 231380-U

NOS. 4-23-1380, 4-23-1381, 4-23-1382 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 29, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Ky. R., Ki. R., and K.D., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
|        Petitioner-Appellee, | ) | Nos. 22JA161 |
|        v. | ) |     22JA162 |
| Krystal B., | ) |     22JA163 |
|        Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | David A. Brown, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Harris and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in finding respondent unfit or in its placement of the minors.

¶ 2    The State filed petitions for adjudication of wardship alleging the minors, Ky. R. (born July 2011), Ki.R. (born July 2015), and K.D. (born June 2009), were neglected. Following a hearing on the petitions on February 8, 2023, the trial court found the minors neglected due to an environment injurious to their welfare. The court placed custody of all three minors with Robert R., the father of Ky. R. and Ki. R., on a temporary basis, until further order of the court.

¶ 3    On September 13, 2023, the State filed amended shelter care petitions, again alleging the minors were neglected due to an environment injurious to their welfare. At the adjudicatory hearing on October 18, 2023, the trial court accepted the stipulation of respondent,

Krystal B., to the allegations of the petition and found the minors neglected due to an environment injurious to their welfare. At the dispositional hearing held that same day, the court found respondent unfit to have custody of the minors, made the minors wards of the court, and granted guardianship to the Illinois Department of Children and Family Services (DCFS), with the right to place. In this consolidated appeal, respondent argues the court's order finding her unfit was against the manifest weight of the evidence. She also argues the court erred in making the minors wards of the court and granting guardianship to DCFS, with the right to place. For the reasons that follow, we affirm.

¶ 4                                 I. BACKGROUND

¶ 5            On August 4, 2022, the State filed petitions for adjudication of wardship, seeking to adjudicate the minors neglected under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)). The petitions alleged respondent is the mother of the minors. The parental rights of the minors' fathers are not at issue in this appeal.

¶ 6            The petitions alleged the minors were neglected due to an injurious environment because K.D. had been diagnosed with type 1 diabetes and respondent had failed to manage it properly, resulting in three hospitalizations since August 4, 2020. The petitions further alleged respondent had not attended training to help manage K.D.'s condition, and a physician expressed concern about her delay in getting K.D. to the hospital. Respondent blamed K.D. for not regulating his diabetes properly and admitted to spanking him as discipline for failing to care for his diabetes. The family was offered intact services but refused to participate. The petitions requested the minors be found neglected and adjudged wards of the court.

¶ 7            Following a hearing on the petitions for adjudication of wardship on February 8, 2023, the trial court found the minors neglected due to an environment injurious to their welfare

(*id*. § 2-3(1)(b)). The court placed custody of all three minors with Robert R., the father of Ky. R. and Ki. R., on a temporary basis, until further order of the court.

¶ 8 The State filed amended shelter care petitions on September 13, 2023, again alleging the minors were neglected due to an environment injurious to their welfare. The State alleged a social worker at the Pediatric Diabetic Resource Center had expressed concern about determining the party responsible for managing K.D.'s care following placement of the minors with Robert R. Robert R. had not participated in training and discontinued use of K.D.'s insulin pump and continuous glucose monitor against medical advice. Robert R. also left K.D. at home without proper supervision after being informed he should not do so given the severity of K.D.'s condition. Additionally, the State alleged Robert R. had committed domestic violence by headbutting his girlfriend while all three minors were present in the home, had at least two prior convictions for domestic violence offenses, and missed two required drug screenings.

¶ 9 The State further alleged K.D. had called DCFS and reported respondent grabbed him by the hair and threw him to the ground when he could not find his continuous glucose monitor. K.D. eventually located the monitor. At a subsequent meeting addressing the best method for managing K.D.'s diabetes, respondent and Robert R. "argued intensely." The State alleged respondent and Robert R. were informed the best way to manage K.D.'s diabetes was to use the insulin pump and the continuous glucose monitoring system, but Robert R. lost the pump shortly after the meeting. The State requested the minors be found neglected and made wards of the court.

¶ 10 At the adjudicatory hearing on October 18, 2023, the State detailed the witnesses who would testify to establish each of the factual allegations of the amended shelter care petitions. After respondent stated she had no objection, the trial court accepted her stipulation to

the allegations of the petition. The State rested, and respondent did not present any evidence. The court found the amended petitions proven by a preponderance of the evidence and adjudicated the minors neglected due to an environment injurious to their welfare.

¶ 11    The matter proceeded immediately to a dispositional hearing. The trial court stated it had received and reviewed the dispositional hearing report and an addendum to the report. In response to the State's questioning, Children's Home caseworker Emmett Lange stated K.D. used a Dexcom continuous glucose monitor as part of his diabetes treatment. Respondent took K.D.'s phone from him despite knowing he needed it to use his continuous glucose monitor. K.D. did not have access to a phone to control his continuous glucose monitor for about 24 hours, until his caregiver bought one for him with her own funds.

¶ 12    The dispositional hearing report indicated respondent was employed full-time as a welder and had appropriate housing for the minors. Respondent had completed many of the recommended services, including a substance abuse assessment, a psychological examination, and a parenting class. She also attended mental health counseling appointments and consistently attended her scheduled visits with the children. The report recommended respondent also complete a domestic violence victims class to address her "history of engaging in relationships where there have been instances of domestic violence." The report indicated respondent had positive interactions with the children during visits, but she became upset at the end of one visit when she was informed K.D. was being transported to an LGBTQ+ youth center. Respondent did not believe K.D. was mature enough to go to the center and had concerns about the topics discussed there. Respondent became angry and yelled at the caseworker, causing Ki. R. to hide under a chair.

¶ 13        The dispositional hearing report also noted respondent and Robert R. blamed each other for the minors being placed in DCFS custody and they regularly informed the caseworker about their conversations. The report elaborated on the incident involving K.D.'s phone, explaining that when respondent learned she would not be allowed unsupervised visitation or phone calls with the children, she demanded to have their phones returned because she refused to pay for them if she could not talk to the children. The caseworker asked respondent to allow her time to get K.D. a new phone because he needed it to operate his insulin pump and continuous glucose monitor, and he would be unable to receive accurate blood glucose readings without it. Despite knowing the importance of the phone to K.D.'s diabetes treatment, respondent took his phone during a visit and K.D. went without a phone until his caregiver purchased one for him with her own funds the next day.

¶ 14        Respondent did not present any evidence.

¶ 15        The guardian *ad litem* (GAL) informed the trial court the minors all expressed a preference for living with respondent, if possible, but they were also comfortable with living in their foster parents' home. The minors also stated visits with their parents were going well. The GAL asserted he did not have any concerns with the children living in the foster parents' home. The GAL recommended the court find respondent unfit, asserting she fights with the father and the caseworker and "DCFS is called all the time." Respondent continued to place her own needs above those of the children and had not demonstrated she could act in their best interest, despite her completion of some of the recommended services.

¶ 16        Following the parties' arguments, the trial court made the minors wards of the court and granted guardianship to DCFS, with the right to place. The court determined respondent was unfit to have custody of the minors, finding, "even though she's engaged in these

services, it hasn't changed anything," as demonstrated by respondent's conduct in taking K.D.'s phone when he needed it for an urgent medical purpose. Respondent's act of taking the phone in these circumstances showed "a lack of judgment, poor decisionmaking, and selfishness." Respondent resisted engaging in services and failed to demonstrate she could safely parent the children. The court stated respondent appeared to be more concerned about her own interests than the best interest of the children. The court found respondent "failed to meet minimum parenting standards" and was "unable to keep these children safe." The court admonished respondent to comply with the terms of the service plans and set the matter for a permanency review hearing.

¶ 17 Respondent filed a timely notice of appeal from the trial court's dispositional order in each case. This court consolidated the appeals on our own motion.

¶ 18 This appeal followed.

¶ 19 II. ANALYSIS

¶ 20 Respondent contends the trial court's finding of unfitness was against the manifest weight of the evidence. She maintains the evidence related to her management of K.D.'s diabetes was not sufficient to find her unfit to care for him. Additionally, the State did not present any evidence indicating she was unfit to parent Ky. R. and Ki. R. Unlike K.D., they do not have health conditions requiring treatment with "extraordinary skill," and the evidence related to her care of K.D. did not reflect on her fitness to parent the other two minors. Respondent also contends the court abused its discretion in making Ky. R. and Ki. R. wards of the court and granting guardianship to DCFS, with the right to place. She argues the evidence did not establish any safety concerns for Ky. R. or Ki. R. while in her care, they expressed a desire to live with her, and it was in their best interest to remain in her custody.

¶ 21 The Juvenile Court Act sets forth a two-step process for determining whether a minor may be removed from a parent's custody and made a ward of the court. *In re A.P.*, 2012 IL 113875, ¶ 18. The first step is the adjudicatory hearing, where the trial court considers only whether the minor is abused, neglected, or dependent. *Id.* ¶ 19. If the court determines the minor is abused, neglected, or dependent, the case proceeds to the second step, the dispositional hearing. *Id.* ¶ 21 (citing 705 ILCS 405/2-21(2) (West 2010)).

¶ 22 At the dispositional hearing, the trial court determines whether it is in the best interest of the minor and the public to make the minor a ward of the court. 705 ILCS 405/2-22(1) (West 2022). If the minor is made a ward of the court, the court determines the proper disposition to best serve the health, safety, and interests of the minor and the public. *Id.* The court may remove a minor from a parent's custody if it determines (1) the parent is unfit or unable, for a reason other than financial circumstances alone, to care for, protect, train, or discipline the minor and (2) the minor's health, safety, and best interest will be jeopardized by remaining in the parent's custody. *Id.* § 2-27(1). The rules of evidence do not apply at the dispositional hearing, and the court may consider all evidence helpful in determining a proper disposition. *In re M.D.*, 2022 IL App (4th) 210288, ¶ 63. At this stage, where the finding of unfitness does not result in termination of parental rights, the State must prove unfitness by a preponderance of the evidence. *In re April C.*, 326 Ill. App. 3d 245, 257 (2001).

¶ 23 A trial court's dispositional order will be reversed on appeal only if its findings of fact are against the manifest weight of the evidence or the court abused its discretion by selecting an inappropriate disposition. *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41. A trial court's finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident or the decision is unreasonable, arbitrary, or not based on the evidence presented. *Id.* This standard is

deferential to the trial court because it is in a better position to observe the witnesses, assess their credibility, and weigh the evidence. *Id.*

¶ 24 In this case, the trial court's decision finding respondent unfit as to K.D. was not against the manifest weight of the evidence. The evidence supports the court's findings that respondent demonstrated poor judgment and selfishness by taking K.D.'s phone when K.D. needed it to manage his diabetes. The evidence showed K.D. had been hospitalized several times due to failure to properly manage his diabetes, thus supporting the court's finding he needed the phone for an urgent medical purpose.

¶ 25 Respondent argues K.D. could have monitored his blood glucose levels and operated the insulin pump without his phone, but her claim is based on evidence and argument not presented in the trial court. More importantly, the evidence shows respondent was informed the best method for K.D. to manage his diabetes involved the use of his phone to monitor his blood glucose levels and operate the insulin pump. Respondent's act of taking K.D.'s phone hindered K.D. in managing his critical medical needs and placed him at risk. As the court found, it also showed respondent continued to exhibit poor judgment and selfish behavior by placing her interests above those of her children.

¶ 26 Respondent also contends the evidence related to her care of K.D. does not establish her unfitness as to Ky. R. and Ki. R. We note that "[c]ases involving an adjudication of neglect and wardship are *sui generis*, and each case must ultimately be decided on the basis of its own particular facts." *In re Christina M.*, 333 Ill. App. 3d 1030, 1034 (2002). In this case, respondent stipulated to the allegations establishing the neglect of all three minors, and she does not dispute the trial court's findings of neglect in this appeal.

¶ 27        Generally, evidence supporting a finding of unfitness as to one child may be relevant to a parent's fitness as to other children. See *In re D.F.*, 201 Ill. 2d 476, 500 (2002). Here, the trial court found respondent's action in taking K.D.'s phone showed "a lack of judgment, poor decisionmaking, and selfishness." Those findings reflect on respondent's parenting skills in general. They apply not only to K.D., but also weigh upon respondent's fitness to care for and protect her other children. As the court specifically found, respondent "failed to meet minimum parenting standards" and was "unable to keep these children safe." The court's concern about respondent's parenting skills was warranted, particularly given her history of failing to properly manage her child's medical condition, which resulted in multiple hospitalizations.

¶ 28        Further, the trial court, consistent with the guardian *ad litem*'s recommendation, found respondent's engagement in services "hasn't changed anything." Respondent resisted engaging in services, had not corrected the conditions leading to the removal of the children, and was ordered to complete additional services following the dispositional hearing. With regard to respondent's resistance to engaging in services, the court noted, "the frustrating thing from my vantage point is it's almost like both of you are doubling down on your positions and you're not going to budge because you're right and everybody else is wrong." The court agreed with the State and the GAL that "both the parents that are here appear to be more concerned about their own feelings, their own image more so than the best interest of the kids." The court made additional statements about respondent's resistance to cooperating and lack of progress, and concluded the children "need stable adults that are looking out for their best interests, first and foremost, for the rest of their lives. These services that we've ordered and have provided to you

guys is to try to accomplish that. And we're well into these cases and it doesn't seem like we're making progress."

¶ 29    Although respondent has engaged in services, the record indicates her failure to fully cooperate has undermined her ability to correct the conditions that led to the removal of her children. She was also ordered to complete additional services following the dispositional hearing. Thus, she has ongoing requirements to address to enable her to meet minimum parenting standards and safely parent the children.

¶ 30    We note the standard of review is highly deferential given the trial court was in a better position to observe the demeanor and conduct of the witnesses and the parties. See *In re D.D.*, 2022 IL App (4th) 220257, ¶ 28 (stating this court gives great deference to a trial court's findings in matters involving minors since it is in a better position to determine the credibility and weight of testimony after observing the demeanor and conduct of the parties and witnesses). The evidence supports the court's finding that respondent failed to demonstrate she could safely parent the children. Because the opposite result is not clearly evident, we conclude the court's decision finding respondent unfit as to all three minors is not against the manifest weight of the evidence.

¶ 31    Respondent also argues the trial court abused its discretion in making the minors wards of the court and granting guardianship to DCFS, with the right to place. She argues the State did not present any evidence showing she was unable to properly care for Ky. R. and Ki. R.

¶ 32    In this case, the trial court did not err in finding respondent unfit to care for each of the minors. The evidence was sufficient to show the minors' health, safety, and best interest would be jeopardized if placed in respondent's custody. Accordingly, the court did not abuse its

discretion by making the minors wards of the court and granting guardianship to DCFS, with the right to place.

¶ 33    Finally, we note this disposition is filed outside the 150-day time frame for accelerated cases specified in Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), which states, "Except for good cause shown, the appellate court shall issue its decision within 150 days after the filing of the notice of appeal." Respondent filed her notice of appeal on November 16, 2023, making the deadline for the disposition April 15, 2024. However, respondent filed the docketing statements two weeks late and requested an extension of time to file her brief. Accordingly, we conclude good cause exists for the delayed filing, despite this court making every effort to abide by the deadline.

¶ 34                                    III. CONCLUSION

¶ 35    For the reasons stated, we affirm the trial court's judgment.

¶ 36    Affirmed.